## BULKLEY vs. REDMOND.

*In the matter of the Estate of* JOHN FLORENCE, *deceased.*

WHERE a will was duly executed by the deceased and left in the possession of his counsel, and, a few months after, the testator sent for it, avowing the purpose of destroying it, and a day or two subsequently stated that he had destroyed it; *Held,* that although the facts raised a presumption that the will had been destroyed by the deceased, it was proper to examine his papers for the purpose of ascertaining whether the instrument had in fact been cancelled.

The fact that the decedent died intestate must be proved before letters of administration issue; and that is ordinarily shown by establishing that no will can be found.

A lost or destroyed will cannot be proved in the Surrogate's Court; but jurisdiction in such case belongs to the Supreme Court.

The grant of letters of administration does not preclude any party in interest from instituting proceedings in the Supreme Court to establish a will lost, or destroyed by accident or design; and on the will being proved there, the letters of administration will be revoked.

The Revised Statutes permit the revocation of a will by its "destruction" by the testator, and do not require proof of the mode of destruction, when the instrument was last in the testator's possession and cannot be found.

Proof of the "injury or destruction" of the will, by two witnesses, is only required when the act has been performed by some other person, in the testator's presence and by his direction and consent.

When the will is last traced to the possession of the testator, and on his decease, after examination of his papers, and proper inquiry of the persons in his confidence and about his person during his last sickness, it cannot be found, the presumption is that it was destroyed by the testator, *animo revocandi.*

A will cannot be proved as a lost or destroyed will, unless it is shown to have been in existence at the death of the testator, or to have been fraudulently (*or accidentally*) destroyed in his lifetime.

ALBERT MATHEWS, *for Petitioner.*
JOHN ANTHON, *for Contestant.*

THE SURROGATE. The guardian of the infant children of the deceased John Florence having applied for letters of administration, Margaret Redmond intervenes, alleging that the deceased did not die intestate. On the proofs taken it appears, that Mr. Florence, about the middle of February, 1852, executed a will in the presence of two subscribing witnesses, and under the supervision of his counsel, who testifies to the fact of execution. On that, or the next day, he attempted his life. This instrument remained in the possession of his counsel until the end of May ensuing, when he sent for it, and it was given to him. He said he wished to destroy it. A day or two after that, he told his counsel that he had "destroyed" it, and requested him to destroy all memoranda relating to it, expressing the wish, "that under no circumstances should the contestant here receive any thing from him. He spoke very bitterly and feelingly." It appears that the party now intervening, who it seems was a legatee under that will, subsequently instituted certain legal proceedings against Mr. Florence ; and on various occasions he expressed to his counsel the same views in respect to his wish that she should not receive any share

of his estate. Twice afterwards he directed a will to be prepared for him, and instruments ready for execution were transmitted to him by his counsel; but it does not appear that either of them was executed.

The statute relative to revocations of wills provides, that " no will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, cancelled, obliterated, or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent; and when so done by another person, the direction and consent of the testator and the fact of such injury or destruction, shall be proved by at least two witnesses." (2 *R. S., p.* 64., § 35). This provision was somewhat varied from the language of the statute as it previously stood (1 *R. L., p.* 365., § 3.), " so as to guard more effectually against fraud, and to render the section conformable in its terms to the construction it had received." (3 *R. S., 2d. ed., Revisers' Notes,* p. 631.) The former statute recognized revocations " by burning, cancelling, tearing, or obliterating such last will and testament by the testator himself, or in his presence and by his direction and consent." No particular mode of establishing the cancellation was prescribed. The proof was left to abide the usual rules of evidence. The Revised Statutes changed the law, by permitting a revocation by the *destruction* of the instrument; and by demanding proof by two witnesses, when the cancellation was performed by another person by the direction of the testator, and in his presence. The word " destroyed " allows a larger scope to the testator, and does not call for precise proof of the mode of destruction, when the instrument cannot be found. It is obvious also that the provision as to the proof of "injur-

ing or destruction, by two witnesses" was intended to be confined to the single class of cases where the testator did not perform the act himself.

In the present case, the execution and existence of a will some months prior to the decedent's death are proved. The instrument is traced to his possession, and that is the last heard of it, except his statement respecting its destruction. Supposing it well proved that, on due examination of his papers, and diligent inquiry of the persons in the confidence of the decedent and about his person during his last sickness, the will has not been found, what is the presumption of law as to the existence or destruction of the instrument? In the case of *Betts v. Jackson*, the will was executed in 1816, and left in the custody of the testator. In 1821, he made a codicil to it, and in 1822, requested another codicil to be drawn, which was not done, nor the will produced. Two weeks afterwards he died, and the will could not be found. The Supreme Court held that the presumption of law was in favor of the existence of the will, and the burden was on the party alleging its destruction or cancellation to show that fact. The subject was twice discussed in that court, and was then submitted to the appellate court, where it was unanimously determined that in such a case the legal presumption was that the testator had destroyed the will *animo revocandi*. (See 4 *Cowen*, 483 ; 9 *Cowen*, 208 ; 6 *Wendell*, 173.) The statute, however, comes in and adopts the rule prevailing at common law. By section 67 (2 *R. S., p.* 67), it is expressly declared that no will "shall be allowed to be proved as a lost or destroyed will, unless the same shall be proved to have been in existence at the time of the death of the testator, or be shown to have been fraudulently destroyed in the life-time of the testator." I have not the slightest doubt, therefore, that when a will is shown to have been last in the possession of the decedent, and not to have been found after his decease on diligent examination, the law presumes it was de-

stroyed by the decedent, *animo revocandi.* Indeed, the statute would justify a much broader proposition. This being the legal presumption, the *fact* of destruction is thus established, and the statute allows a will to be " destroyed," without prescribing or calling for proof of the particular mode, except in the single case when the act appears to have been performed by some person other than the testator. The naked fact that the will is not found, raises the presumption of revocation, and that presumption becomes conclusive, unless rebutted.

In addition to the non-production of the instrument in this case, we have the declaration of the decedent to his counsel, that he had destroyed it, and his request to have other wills prepared for him. Such declarations would of course have no weight, in the face of the instrument if produced uninjured. A revocation cannot be proved by parol declaration, in opposition to a valid will shown to exist. Such declaration can only be competent in connection with proof of an act of cancellation, or to repel or strengthen a presumption of cancellation. It may be material, to shew *quo animo* the act was done, or to elucidate facts and circumstances bearing upon the question of cancellation. As the matter now stands, I think there is not only a failure of proof of an existing will at the testator's death, but, on the contrary, a presumption that the will executed in February, 1852, was destroyed by the decedent. I am not satisfied, however, that a proper search has been made among the papers of the decedent for the instrument, and must therefore direct the appearance of the widow, and the parties who have had the custody of his papers, in order that I may make further inquiries.

*In the same matter.*

FEBRUARY 15.

IT having now been established that no will has been found existing at the decedent's death, after a proper search, I think that the grant of administration should be made. A lost or destroyed will cannot be proved in this court, and the Surrogate's jurisdiction in such a case extends only to such inquiries as necessarily appertain to the determination of intestacy, which question must always be passed upon before granting administration.   The fact that the decedent died intestate must be proved, before letters of administration issue, and that fact is ordinarily shown by proving that no will can be found.   Such a determination, however, does not preclude any party in interest from instituting proceedings in the Supreme Court, in order to establish a will lost or destroyed by accident or design. (2 *R. S.*, 4*th Ed.*, *p.* 253., § 63.) If such an instrument should be proved in that court, the letters of administration will be revoked as a matter of course. (2 *R. S.*, 4*th Ed.*, *p.* 263., § 46.) Indeed, the statute has contemplated the case of a grant of administration at the very time an application to prove a lost or destroyed will may be pending in the Supreme Court; and instead of declaring the grant void, or restraining the Surrogate from issuing letters during the pendency of such a suit, it merely authorises the Court to restrain the administrator from any acts or proceedings that might be injurious to the parties claiming under the lost or destroyed will. (2 *R. S.*, *p.* 254, § 65.) I see no reason, therefore, for delaying administration any further in the present case.   If a suit be instituted to prove the will alleged to be lost or destroyed, abundant remedy exists for the protection of the rights of all persons concerned.