KINGS COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.—
March, 1882.

## McNALLY v. BROWN.

*In the matter of the application for probate of a will of*
ROBERT F. BROWN, *deceased.*

Upon an application for the probate of a will, as lost or destroyed,—it appearing to have been in existence at the time of decedent's death,—the loss or destruction is a fact material to be proved.

Upon an application for the probate of a lost or destroyed will, it is not necessary,—under Code Civ. Pro., §§ 1865, 2621, requiring its provisions to be "clearly and distinctly proved by at least two credible witnesses,"—that the witnesses should remember the exact language; but they must be able to testify at least to the substance of the whole will, so that it can be incorporated in the decree if probate is granted.

Accordingly, where probate was asked, of a will in existence at the time of decedent's death, and last seen in the possession of the principal beneficiary, the petitioner, but there was no evidence that it had been lost or destroyed; and the testimony of petitioner, the draftsman, the subscribing witnesses, and another, as to its provisions, was such as only to enable the court to surmise the nature thereof, and no two witnesses proved all the provisions,—

*Held,* that there was not a compliance with the statute, and that probate must be refused.

APPLICATION by Robert Brown, a son of decedent, for the probate of a will claimed to have been lost or destroyed since the latter's death; opposed by Emma McNally, a daughter of decedent, and another.

The facts appear sufficiently in the opinion.

JOHN Z. LOTT, *for petitioner.*

E. J. DOOLEY, *for contestants.*

THE SURROGATE.—Under the Code, this court has authority to admit to probate a lost or destroyed will which was in existence at the time of the testator's death, or was fraudulently destroyed in his life-time; but it is indispensable that the provisions of such will should be *clearly* and *distinctly* proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness (Code, §§ 2621, 1865).

It appears that the will was in existence at the time of the death of the testator; but there is no evidence that it has been lost or destroyed, which is a material fact to be proved, particularly when it was last seen in the possession of the person in whose favor it is claimed to have been made.

Neither were the provisions of the will *clearly* and *distinctly* proved by two witnesses.

The witness Brown, the son of the testator, testified that the property in Canton street was left to his mother during her life, and that, after her death, it was to go to him; that the property in Grand avenue, and the personal property, were left to him solely; that the Canton street property was to come to him in the event of his mother's marriage; that his sister's name was not mentioned; that he forgot a good deal that was in the will, and had a very poor memory.

Thomas W. Dawson testified that he was one of the witnesses to the will; that he heard the will read at the

time it was executed, but could not remember all of it,—it was so long ago; that he remembered that the Canton street property was left to the testator's wife and the Grand street property to his son absolutely,—he to have possession of it when he came of age, his mother to have the benefit of it until he came of age.

Thomas J. Dawson, the other subscribing witness, heard the will read and slightly remembered the contents of it. His recollection was that the property in Canton street was left to Mr. Brown's wife, and the property in Grand avenue to his son Robert.

George Miller did not read the whole of the will, only read some portions of it:

Q. "From your recollection of reading that will, can you state what it said?"

A. "I can't state. I think that Mrs. Brown pointed out to me, in the presence of her daughter, the portion I read, where it said the property should be left to the son and the daughter should get nothing; then we had a general conversation about it."

Edward F. O'Reilly, the lawyer who drew the will, testified that the testator had two houses in Canton street which were embodied in the will, which he gave to his wife, and there was a house in the Seventh ward,—he thought in Grand avenue,—that was given to his son, and he thought testator mentioned at the same time that he had a daughter; that he thought that the testator said that he gave his daughter something previous to that, and that would compensate her for not having anything in the will.

Q. "Were there any further provisions in the will than you have mentioned?"

A. " Not to my recollection, except that all his lawful debts should be paid."

It is impossible to find that the provisions of the will have been *clearly* and *distinctly* proved by two witnesses.

It is not necessary that the witnesses should remember the exact language used by the testator ; but they must be able to testify at least to the substance of the whole will, so that it can be incorporated in the decree, should the will be admitted to probate.

In the principal case, what were the terms of the devise of the Canton street property to the wife ? Was it for life, or until she should marry again, or absolutely ? Was she to have the possession of the property in Grand street during the minority of the son ? To whom was the personal property bequeathed ? The witnesses do not agree on these points. The son of the testator, who had the possession of the will for several years after his father's death, who claims to be the person most interested in having it admitted to probate, and who seems to have read it more recently than the other witnesses, ought to be the person most familiar with its provisions. It is likely, however, that he was not to come into possession of the property devised to him, until he had reached the age of twenty-one, as testified to by Thomas W. Dawson, who is corroborated on this point by what the testator told Miller, in speaking to him of the contents of his will, that he would leave his property to his son, and that his daughter should not get anything, *that is*, *after his son came of age.*

According to the evidence, the substance of the will, then, probably was that the Canton street property was devised to the widow for life if she did not marry again,

and, upon her death or marriage, it was to go to the son; that the Grand street property was devised to the son, to take possession of it when he became twenty-one years of age, and his mother to have the benefit and possession of it until then; that the personal property was bequeathed to the son. But no *two* witnesses have proved all these provisions. Probate must therefore be refused (Sheridan *v.* Houghton, 6 *Abb. N. C.*, 234).

Decreed accordingly.