CATTARAUGUS COUNTY.—HON. ALFRED SPRING, SURROGATE.—February, 1883.

HATCH v. SIGMAN.

*In the matter of the application for the probate of a will of JOHN RUSSELL, deceased.*

The power of a court to admit to probate a will alleged to have been lost or destroyed exists only in the cases prescribed by statute (Code Civ. Pro., §§ 1861, 2621).

In a proceeding for the probate of a will alleged to have been lost or

destroyed, the declarations of decedent respecting its dispositions are admissible, but only as a circumstance taken in connection with other evidence tending to establish the facts. Reiterated declarations of this character, uttered by decedent to various persons, cannot be galvanized into the "two credible witnesses" made an indispensable necessity by Code Civ. Pro., § 1865.

*It seems*, that the mere concomitance of interest and opportunity to surreptitiously destroy the will of another does not rebut the presumption existing where such instrument, known to have been in existence, cannot be found after testator's death, that it was destroyed by him *animo revocandi*.

The evidence, upon which petitioner relied to establish a will alleged to have been lost or destroyed, was declarations of decedent and the testimony of one B. It appeared, from the testimony of a great number of witnesses, that the decedent had conversed with them, with affable garrulity, concerning his testamentary dispositions. They agreed, substantially, as to the contents of the instrument, their testimony showing a desire on his part, at the times covered by these conversations, to make petitioner the principal beneficiary of his will; but they did not pretend to prove the formal execution of such a paper. B., testified that, about nine months before decedent's death, witness was in the office of decedent's counsel, H., when decedent was present, and saw, lying on his desk, a blank used in drawing wills, filled out in the handwriting of H.; that he read the formal beginning, which announced the instrument to be decedent's will; that he noticed at the end what purported to be decedent's signature, and, after a space filled with written and printed matter, the names of two other persons, one of which he had a faint impression was that of H., having no recollection as to the other: that, in an ensuing conversation with decedent, the latter mentioned particularly the contents of the instrument, which were favorable to petitioner, and stated that H. was the executor. B. had no other information as to the provisions of the paper, and it was not pretended that the statutory requirements relating to execution were complied with on this occasion.—

*Held*, that, the *provisions* of the instrument not having been proved as required by statute, and there being, moreover, no sufficient evidence of execution, probate must be refused.

Everitt v. Everitt, 41 *Barb.*, 385—distinguished.

PETITION, by Armenia Sigman, decedent's daughter, for the probate of a will alleged to have been lost or destroyed; opposed by Eliza A. Hatch and another. The facts appear sufficiently in the opinion.

NASH & LINCOLN, W. G. LAIDLAW *and* B. A. RICH, *for proponent.*

ALLEN & THRASHER, W. H. HENDERSON *and* GEORGE STRAIGHT, *for contestants.*

THE SURROGATE.—This is a proceeding instituted by the petitioner, an illegitimate child of decedent, to establish a will alleged to be lost or destroyed. The right of an interested party to resort to proceedings like the present is occasionally an imperative necessity, and the mode of procedure, the proof required, and the restrictions imposed are statutory in their nature, so that a brief reference to the laws applicable in such cases will serve to illustrate more clearly the pertinence or deficiencies in the proof presented.

*First.* Where a will, *duly executed,* has been lost or destroyed, by accident or design, before it was duly proved and recorded within this State, an action to establish it may be maintained (Code Civ. Pro., § *1861;* Voorhees v. Voorhees, *39 N. Y., 463*).

*Second.* Since the enactment of the Code of Civil Procedure, proceedings to establish lost or destroyed wills can be entertained in a Surrogate's court (Code, § *2621*).

*Third.* Petitioner is not entitled to a decree establishing such will unless, 1st, the will was in existence at testator's death, or 2nd, was fraudulently destroyed in his lifetime; and, in either case, its provisions must be clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness (Code, § *1865*).

*Fourth.* The power of a court to admit to probate a lost or destroyed will exists only in the cases I have mentioned (Timon v. Claffy, *45 Barb., 438, 446;* Harris v. Harris, *36 Barb., 88, 97*).

Let us examine the facts in the case under consideration, and see if they come within the purview of these established rules. John Russell died February 19th, 1881, leaving him surviving his widow, an unfortunate child by his second wife, and five children by his first wife. His children were all of full age, and all, except Mrs. Sigman, lived away from Cattaraugus, where the testator resided at the time of his death. In 1848, Mr. Russell settled with his first wife, conveying to her and their children seventy-five acres of land in Wyoming county, and, as far as we can glean from the evidence, left them to shift for themselves. Friendly relations, however, at a later date at any rate, were sustained between him and these children, as they visited him at his home in Cattaraugus, and were assisted by him at various times. His daughter, Armenia, the petitioner in these proceedings, lived with him in Cattaraugus until her marriage in 1872. Upon his death, the petitioner, in the firm belief that he had left a will favorable to her, made a vigorous and unremitting search for such an instrument, but without success. The next of kin, with Mrs. Sigman, entered into a contract with the widow of deceased, relinquishing to her a specified amount, and she renounced her right to administer his estate. A second contract was then entered into, between Mrs. Sigman and the five children by his first wife, providing for a distribution of the balance of the estate, and permitting Mrs. Sigman to receive a share thereof. All of the estate, except about ten thousand dollars, has been distributed pursuant to these contracts, and the balance now remains in the hands of the administrator, ready to be divided in accordance therewith.

It is apparent that, in these transactions, Mrs. Sigman was firmly convinced that her father left a will, and the contract last referred to was drawn with the evident purpose of enabling her to derive whatever benefit she could from such an instrument, in case it was ever found. But the property was undergoing distribution and separation in compliance with the terms of the contract, and her only hope of acquiring anything, beyond the sum kindly awarded to her by her brothers and sisters, was in establishing a will under the provisions of the statutes I have cited; hence this proceeding.

The evidence, upon which she relies to establish the will, is declarations of testator and the testimony of Mr. Babb. A great number of witnesses has been produced, who testify that Mr. Russell told them he had made his will, and that it was favorable to Mrs. Sigman. Several of the witnesses detail, with minuteness and particularity, the contents of the will as gathered from conversations with him; and these statements, commencing nearly two years before his death, continued up to a short time preceding that event. These declarations were to the effect that Mr. Herrick, an attorney in Cattaraugus and the usual counsel of Mr. Russell, drafted this instrument, was the executor named therein, and was one of the witnesses. Mr. Herrick died in May, 1880, nine months before the alleged testator departed this life. Mr. Babb, a brother-in-law of Mr. Herrick, states that in February, 1880, he was in Mr. Herrick's office and saw a paper lying open on Herrick's table. Mr. Russell was present. Mr. Babb testifies that he noticed the paper was a blank used in drafting wills, and was filled out, the body of the instrument being in the handwriting of Mr. Herrick.

Mr. Babb read the formal beginning of the paper, and saw that it purported to be the will of Mr. Russell. He also noticed what purported to be the signature of Mr. Russell at the end of the instrument, and observed that there were the names of two other persons below the signature of Mr. Russell, the space intervening being filled with written and printed matter. He further states that a conversation ensued, in which Mr. Russell stated particularly the contents of this instrument, showing that it was exceedingly favorable to his daughter Mrs. Sigman, and calling it his will; he also said that Mr. Herrick was the executor. Mr. Babb has a faint impression that Mr. Herrick was also one of the subscribing witnesses to the paper, but he did not have any recollection as to the other witness thereto. He did not read the paper, and only knows the contents from his conversation with Mr. Russell.

Mr. Herrick, a brother of the lawyer, also had a conversation with the decedent, in his brother's office, in March, 1880, in which Russell stated to him the contents of his will.

Mrs. Borges, a German lady of intelligence and acuteness, testifies to a series of conversations with Mr. Russell in reference to his will, and the contents were stated to her with particularity. He also made statements to a Mr. Hyslop, an old acquaintance. In fact, the old gentleman talked with affable garrulity concerning his testamentary dispositions.

These witnesses agree, substantially, as to the contents of the instrument, and it shows a desire on his part, at the times covered by these conversations, to make his daughter Armenia the principal beneficiary of his will.

So we have the question squarely presented, whether the declarations of the testator are sufficient to justify a court in admitting a will to probate. There is no pretence here that the formal execution of the will has been proven, nor that two credible witnesses have testified to the provisions of any will, unless the reiterated declarations of testator to various persons constitute two persons.

While there is considerable conflict in the few cases involving declarations of deceased persons in proceedings of this character, yet I regard that as the better rule— the more consistent and reasonable doctrine—which favors their admission; but while these declarations are admissible, it is only as a circumstance to be taken in connection with other proof tending to establish a certain fact. It would be rendering the strict language of the statute nugatory to say that declarations of decedent, however lucid and precise they may be, however minutely they may detail the facts occurring at the execution of the will, and however numerous they may be, will establish the execution of the will, and also be tantamount to the "two credible persons" made an indispensable necessity by the statute.

Declarations of deceased persons are always a dangerous kind of testimony, and are received and scanned with closeness and scrutiny, and, in the usual run of cases tried in a Surrogate's court, are not even admissible, except as bearing upon the testator's mental capacity; and it would be a marvellous stretch of the judicial functions to say that the reiteration of these statements can galvanize them into the "two credible witnesses" provided for by the statute.

The testimony of Mr. Babb does not serve to relieve the petitioner from the stringency of the Code. The will, if any, had been executed before this conversation. There was no republication or re-execution of the will in the presence of Mr. Babb. There is, in fact, no claim on the part of proponent that the statutory requirements were then complied with. His recollection as to the name of one witness is but a vague impression, and he furnishes no light whatever as to the name of the other. His knowledge of the contents of the will is dependent wholly upon the statements of Mr. Russell. No witness is produced who was present at the time of the execution of the alleged will. His absence is not accounted for; his name is not divulged; even the approximate time of the execution of the instrument is not given. The entire fabric of proponent's case is builded and constructed upon declarations of Mr. Russell. We must depend upon these, to prove the execution of the will; upon these, to prove the provisions of an alleged instrument diverting over twenty thousand dollars from the channels provided by the statutes of distribution and descent. Surely the law of wills, grown up and established by a long line of decisions, and embodied in our statutes, precisely defining the requisites necessary to the execution of a will, and to proof of its contents if lost or destroyed, does not admit of such dangerous laxity as this. If so, written wills had better be done away with; and testamentary dispositions be left to the varying construction put upon the daily and unconsidered statements of a decedent.

But the counsel for the proponent, in his very erudite brief, urges with pertinacity that strict proof is not

required.   It is the policy of courts to sustain the will and carry out the intentions of a competent testator, and repeatedly they have given a liberal interpretation to the statutes defining the method of executing wills; yet even in those cases a substantial compliance has been insisted upon.

In Dan v. Brown (*4 Cow., 483*), a case relied upon by proponent, Governor Marcy was one of the witnesses to the will, one was dead, and the other Mr. Marcy had forgotten, three being then required.   Mr. Marcy was an attorney, and he testified with circumstantiality to the execution of the will: that there were three competent witnesses to the will, and that the statutory requirements were complied with at the time of its execution; and, beyond all that, the contents were proven precisely by competent proof.   As Judge WOODWORTH says, in his opinion, at page 490: "Here the attorney drew the will, subscribed it as a witness, and testifies to everything but the name of the third witness."

Fetherly v. Waggoner (*11 Wend., 599*) was an action of ejectment, and defendant relied upon a devise favorable to him—contained in a lost or destroyed will.   The will had been executed thirty-six years previously, and the defendant had been uninterruptedly in possession of the premises devised to him, since the death of the testator.   One witness in that case testified, with minuteness, to the execution of the will in its main particulars, and there was an abundance of other proof as to the will and its contents; yet Judge NELSON, in that case, holds that the will, being over thirty years old, was admissible under another statute, and cites no principle that will enlighten us in this case.  .

In Brown v. Clark (*77 N. Y., 369*), the will was drawn by a lawyer, a full attestation clause was added, and the two witnesses testify in detail to everything required for the execution of a will, except that they have no recollection, either way, whether they signed at the request of testator. The court hold that, *there being no proof to the contrary*, and every other fact being fully proved, and a full attestation clause being appended, "the mere non-recollection of witnesses under these circumstances would not justify a finding that the statute requirements were not observed," especially as five years had elapsed since the execution of the will, thus rendering it difficult for those unacquainted with the method of executing wills to remember circumstantially the details then transpiring.

*In re* Kellum (*52 N. Y., 517*) is analogous in principle to the last case cited, and enunciates the same doctrine.

The cases in Cowen and Wendell which I have cited were not actions to establish a will, but the actions were either partition or ejectment, and the party defending relied upon the will as a defence; and courts, in that class of cases, have been disposed to depart in no very slight degree from the strictness of the statute. While, in cases where the execution of the will has been brought in question, the fact that the will was drawn by a lawyer familiar with the requirements attending the execution of wills, is deemed a circumstance in favor of the presumption of due execution, yet I find no case holding that this isolated fact is of itself sufficient.

In this case, it is simply by inference from Mr. Babb's testimony that we can say there was any attestation clause, and even then we are wholly in the dark as to its

contents.   Are we to indulge in the broad inference that the attestation clause contained a recital of all the facts necessary to the due execution of a will?   We might as well infer, directly, that the will was properly executed, and omit the circumlocution of so inferring through a hypothetical attestation clause.   But many cases have been decided, in this State, rejecting the wills of competent testators simply because of defective execution, thus showing clearly that the statutes, prescribing what is necessary to be done to the due execution of a will, are not idle fictions—are not obsolete (Chaffee v. Bap. Miss. Conv., *10 Paige, 85;* Seymour v. Van Wyck, *2 Seld., 120;* Mitchell v. Mitchell, *16 Hun, 97;* Jackson v. Jackson, *39 N. Y., 153;* Lewis v. Lewis, *11 N. Y., 221*).   Certainly less laxity should not be indulged in, when we are obliged to cut adrift from the instrument itself, and depend upon the uncertainty of oral proof to establish everything pertaining to the disposition of the property of decedent.

Counsel refers to Everitt v. Everitt (*41 Barb., 385*).   In that case, the scrivener who drew the will, and who was also an attesting witness, and the other attesting witnesses, had no recollection of the instrument or its execution.   But, 1st, a competent witness was present at its execution and testified with explicitness thereto; 2d, there were three witnesses present who saw the lawyer prepare a paper at the time, and saw the subscribing witnesses present also; 3d, two witnesses were produced who heard the will of testator read after his death, and testified to its contents; 4th, two witnesses saw the will after the death of testator, and testify to the genuineness of the signatures of testator and of the subscribing witnesses; 5th, a copy of the lost or destroyed will was pro-

duced in court.  A stronger array of facts could hardly be strung together than that case presents.   The statutes then in existence were substantially like the section of the Code governing these cases now, and the proof I have recited would certainly bring the case within the compass of the section I have cited.   In that case, every requirement of the statute, when viewed with all its rigor, was complied with.

In the case at bar, the proof fails to establish a single one of the essential facts, except such as are dependent upon the statements of Mr. Russell.   No parallel or analogy exists between the two cases, except that each is predicated upon the one proposition—a lost or destroyed will.   In regard to the proof requisite in establishing the contents of a lost or destroyed will, the statute is exceedingly strict in its requirements.   The few cases I have found, decided since the enactment of the section of the Code, do not relieve us from its stringency.

In Sheridan v. Houghton (*6 Abb. N. C., 234*), the court say, in reference to this section: "But the statute is very strict in its requirements.   It requires that the provisions of a will, lost or destroyed, shall be clearly and distinctly proved by at least two credible witnesses, a a correct copy or draft being equivalent to one witness." See, also, McNally v. Brown (*5 Redf., 372*).   Was there any fraudulent destruction of the will, if any existed?   It is a presumption of law, and a salutary and necessary one, to prevent imposition and fraud, that if a will cannot be found, it was destroyed by testator *animo revocandi* (Betts v. Jackson, *6 Wend., 173;* Loxley v. Jackson, *3 Phill., 126; 2 Hagg. Eccl. Rep., 328; id., 266; 2 Bradf., 281, 284, 285;* Schultz v. Schultz, *35 N. Y., 653*).

In this case, the best phase that can be placed on the evidence traces the will into the safe of Mr. Russell. The argument of proponent is that there was every opportunity for Mrs. Russell to take this will surreptitiously, as she had access to the key, and that a *prima facie* case is made repelling the presumption I have stated. In actions involving the question of undue influence, mere opportunity, even when united with interest, does not invalidate a will or even raise a presumption of the exercise of influence unduly (Cudney v. Cudney, *68 N. Y., 148;* Marx v. McGlynn, *88 N. Y., 357;* Merrill v. Rolston, *5 Redf., 220;* La Bau v. Vanderbilt, *3 Redf., 384–441).*

In Knapp v. Knapp (*10 N. Y., 276*), the defendant, in an action of partition, relying upon a devise contained in a will alleged to have been lost or destroyed, proved the due execution of the will, the competency of testator at the time of its execution, declarations of deceased made shortly prior to his death that he had made a will which was in his desk at his house, that his daughter, who had an interest adverse to the will, had access to this desk, and that a search was instituted for the missing instrument after his death, but it could not be found. After proving these facts, defendant offered to prove the contents of the will, but the evidence was excluded by the trial Judge: the Judge deciding that, although the proof showed opportunity on the part of a person interested in the destruction of the will, yet that did not raise a sufficient presumption of its destruction to permit defendant to go into evidence of its contents; and this decision was sustained by the Court of Appeals.

But what interest had Mrs. Russell in the destruction of the will of her husband? Her right in his property as

his widow, in case he died intestate, was but a trifle more than she would obtain by the will sought to be established; the difference between the two sums is too small to tempt or induce her to perpetrate so grievous and inhuman a wrong as the destruction of her husband's will. If the evidence of Mrs. Borges is to be relied upon, Mrs. Russell was entirely satisfied with the will; and we cannot assume she was dissembling when she frankly stated that she preferred to have the residue of his estate go to his heirs instead of being distributed among her own.

While any destruction of a will against the wish and intention of a testator is fraudulent as to him, and therefore within the statute, although done without design on the part of the person so destroying it, yet that principle has no application to this case; for if the will was, in fact, destroyed by any one except testator, it was done with malicious intent and to divert testator's property from the course he desired it to take. The proof does not implicate any one in the destruction of this will. It does not justify us in an inference casting so grave an imputation upon any one. Probate must, therefore, be refused and the petition herein be dismissed.

Decreed accordingly.