BRUSH *vs.* HOLLAND.

*In the matter of the Estate of* THOMAS BRUSH, *deceased.*

THE probate of a will is a proceeding of a mixed character, being as to the subject matter, a proceeding *in rem*, and as to the persons interested, *lis inter partes* ; consequently none of the parties are competent witnesses.

By the ecclesiastical law, an executor propounding a will is an incompetent witness to sustain it when contested ; but by our statute the oath of the person propounding the will, as to the circumstances of the execution, the delivery and the possession thereof, may be required.

It is the English practice to allow next of kin who have renounced opposition to the will, to be dismissed as parties, for the purpose of being examined as witnesses, subject to the question of their competency on the ground of interest.  When the parties seeking to be dismissed have materially acted in the cause, it would appear to be in the discretion of the court whether to grant the application.  But where an executor has propounded the will, he cannot become a witness except so far as the statute authorizes.

The declarations of a party to the record, may be taken as against himself, or as against another party having a joint interest, but if there are several parties having separate interests in the subject matter, the admissions of one cannot be taken against another.

The declarations of one of the parties to a proceeding in probate cannot be received as evidence, unless the proof be directed to the rejection of particular clauses of the will, or there is ground for charging complicity or conspiracy, or the declarations are part of the *res gestæ.*

Declarations to become part of the *res gestæ* must be made at the time of the act done ; and in a conspiracy, combination must be shown by other proof, before the declarations of one person can be received against another.  Upon questions of evidence, it would seem proper in a case of doubt for the Surrogate to lean to the common law rule, in preference to that of the ecclesiastical courts.

It is competent to show declarations of a party charged with unduly procuring the execution of a will, so far as they tend to prove an existing intent and disposition.

ABRAM. WAKEMAN, *for Executrix.*

JOHN H. BURRILL,
WILLIAM J. COGSWELL, *for Contestants.*

THE SURROGATE.—A contest having arisen on the probate of the will of the deceased, the contestants seek to introduce

proof of the declarations of the decedent's widow, to show incapacity and the exercise of undue influence. The widow is named as a legatee in the will and also as executrix, and she propounds the instrument for proof. The probate of a will, is a proceeding of a mixed character, being as to the subject matter a proceeding *in rem*, and as to the persons interested, *lis inter partes.* Consequently none of the parties are competent witnesses. (*Arnold* v. *Earle*, 2 *Lee's Cases, p.* 380.) By the ecclesiastical law, an executor propounding a will, is an incompetent witness to sustain it when contested. (*Dean* v. *Russell*, 3 *Phil.*, 334.) But by our statute " the oath of the person who received the will from the testator, if he can be produced, together with the oath of the person presenting the same for probate, stating the circumstances of the execution, the delivery and the possession thereof, may be required." (*Laws* 1837, *ch.* 460, § 17.) It is competent therefore in this case to examine the executrix as to the circumstances of the execution. In the English courts the practice exists of allowing the next of kin, who have been cited to see the will propounded and who have appeared and renounced opposition to the will, to be dismissed as parties, for the purpose of being examined as witnesses in the cause. (*Arnold* v. *Earle, ibid.*) Of course the question as to their competency on the ground of interest remains open, as in the case of all other witnesses. Where the parties seeking to be dismissed have materially acted in the cause, it would appear to be in the discretion of the court to deny the application for dismissal. There are instances in courts proceeding according to the course of the civil law, and even at common law, where from necessity the parties may be examined as witnesses, but this is by way of special exception to the general rule. (*Benedict's Ad. Pr.*, § 534.) In equity also, it is a well established practice to allow the examination of a party who has no interest in the subject as to which he is interrogated. (1 *Phill. Ev.*, 51; 1 *Barb. Pr.*, 255.)

In the matter now in hand, the widow having propounded the will, could not be permitted to become a witness, except so far as the statute authorizes her examination touching the circum-

stances of the execution, delivery, and custody of the instrument. Can her declarations then be received in evidence? The general doctrine is, that the declarations of a party to the record may be taken as against himself or as against another party having a joint interest, a co-partner for example; but if there are several parties interested in the subject matter and in the event of the suit, and the interest is not joint, the confessions and admissions of one ought not to affect the other. Why should the statement, not under oath, of a man who happens to possess an interest or share in property, wherein I have a separate interest or share, operate upon my rights and my property. He is not my agent—there has been no contract between us by which I have clothed him with any powers—there is no privity between us—we simply hold shares in the same property, and derive title from the same source. If he has said something to prejudice his title, that is no reason why it should injure mine. Inasmuch as on the proof of a will there can be only one decree, either of rejection or of probate, the declarations of one of the parties cannot from the very nature of the case be received as evidence, without affecting the interests of the other parties—(*Dan* v. *Brown*, 4 *Cowen*, 483; *Smith* v. *Vincent*, 15 *Cow.*, 1; *Hauberger* v. *Root*, 6 *Watts' & Serg.* 431;) unless indeed, the facts are such as to call for a rejection only of particular clauses, or there are indications of complicity or conspiracy, or the declarations are part of the *res gestæ*. Declarations to become part of the *res gestæ*, must be made at the time of the act done, (1 *Greenleaf*, 109;) and in a conspiracy, combination must first be shown, (*Ibid.*, 111;) that is, such a privity between all the parties, such an understanding or agreement to bring about the specific result as destroys their severalty, and makes them one party. This combination cannot be proved by the proposed declaration, but must be established by other proof. Now I find not a trace of any conspiracy as charged between the decedent's widow and her sons—no sign of concerted action—of a joint scheme or design. The result is, that I must reject the evidence in the character in which it is offer-

ed as admissions of a party. Admissions when offered in that way, are given and taken as proofs of facts, and in that sense I think it is my duty to exclude them. (*Osgood* v. *Manhattan Co.*, 3 *Cow.*, 612.)

But there is another way in which declarations are often given in evidence, that demands consideration as to the particular nature of the declaration. In the case of *Wright* vs. *Tatham*, 1 *Ad. & El.*, 3, 8; 7 *id.*, 313; 4 *Bing. N. C.*, 489, after a long struggle through the courts, and very elaborate discussions by distinguished counsel and judges, the House of Lords decided that letters addressed by third parties to the person whose sanity was in issue, were not admissible to show how he was treated by the parties writing, unless connected by proof with some act by the person in regard to the letters or their contents. The reasoning was that the letters could only be evidence as opinions, as acts of treatment, or as explaining some act of the deceased. The facts did not bring them under the last head, and under the two former they were opposed to the principle of the common law which rejects hearsay evidence, and opinions except from experts. It was urged, and perhaps with good reason, that the evidence would have been admitted in the ecclesiastical courts, but I do not feel obligated in questions of evidence to the rules of those tribunals. The Surrogate passes upon wills of real and personal estate, and as wills in respect to lands are governed by the rules of the common law, it would seem proper in a case of doubt, to lean to the common law rule. I am not aware, however, of any case in which the mere hearsay opinion of a living witness, or the declaration of a party has been admitted in the ecclesiastical courts where there were several parties in interest, unless there was some connection between the declaration and opinion and the decedent who was the subject of it; or unless it was viewed as an act of treatment. There is a point of view still in which the proposed evidence may be admissible. When a party is accused of having effectuated a certain act by undue means, if the facts show an opportunity for the accomplishment, I cannot

say that the predisposition of the party to produce that precise result is immaterial, or that his declarations evincing his intention are incompetent evidence. I do not mean to admit that much weight is to be given to such evidence, or that it proves the truth of the declarations, but it has some bearing upon the motives and dispositions of the person charged with procuring the will, and I should be unwilling to say that in that view and bearing it is entirely inadmissible. In the *Thompson Will Case* I admitted proof of the declarations of the person alleged to have exercised an influence over the testator's mind, for the purpose of showing her *animus*, but they had little force in the decision of the case. It is a common thing for persons to boast of an influence they do not possess, and to express intentions they have not the power to carry out, and yet I can see there may be instances in which evidence of such declarations might have some bearing. I shall, therefore, in this case, admit the proposed proof so far only as it goes to show the disposition of the decedent's widow to bring about an unequal will.