JEANNIE T. HARD, Appellant, *v.* CHARLES O. ASHLEY and Others, Respondents.

*Lost will — may be proved by a single witness — not by estoppel — its existence never assumed — presumption of its destruction animo revocandi — burden of proof.*

The proof of a lost will is necessarily secondary, and the law accepts the best evidence that the nature of the case admits of as to its valid execution and contents.

In an action brought to partition the property of a decedent among his heirs, where the defendants claim under an alleged will of the deceased which deprives the plaintiff of any interest in the property, they may establish the will, if it be lost, by the testimony of a single credible witness, but they must show that the will was executed with all the formalities required by the statute and that the testator was of sound mind and under no restraint.

The proof needed to establish a lost will or to show its contents by parol evidence cannot be worked out by way of estoppel, based on the sustained objection of the opposing party to evidence offered in regard to the same.

The destruction of the will of another person without authority is a crime, and a party will not be convicted of such an act upon suspicion or surmise, but only upon substantial proof thereof. The law never assumes a will to have existence in the absence of proof of that fact.

If it be established upon the trial of an action that a decedent made a will, such as the statute permitted him to make in order to dispose of his property, and that it was last seen in the possession and under the control of the decedent, and at his death, after proper search, no will can be found, the presumption is that the will was destroyed by the testator *animo revocandi*, and this presumption stands in the absence of positive proof to the contrary.

He who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof. It is not sufficient for him to show that persons interested to establish intestacy had an opportunity to destroy the will; he must go further and show by the facts and circumstances that the will was actually and fraudulently destroyed.

APPEAL by the plaintiff, Jeannie T. Hard, from a judgment of the County Court of Monroe County in favor of the defendants, entered in the office of the clerk of the county of Monroe on the 22d day of October, 1894, upon the verdict of a jury dismissing the plaintiff's complaint upon the merits, and also from an order entered in said clerk's office on the 31st day of July, 1894, denying the plaintiff's motion for a new trial made upon the minutes.

*William A. Sutherland,* for the appellant.

*John A. Barhite,* for the respondents.

WARD, J.:

This action was instituted in the Monroe County Court to partition certain premises owned by Eliza Ashley of Rochester, situate in that city. Eliza Ashley died on the 17th of April, 1893, and the plaintiff and the defendants, Charles O. Ashley and John H. Acker, were her only heirs at law. The issues made by the pleadings were whether Eliza Ashley died intestate. The defendants claim under an alleged will of the deceased which deprived the plaintiff of any interest in the property. At the close of the evidence the plaintiff's counsel moved for the direction of a verdict for the plaintiff, which the court denied, and the jury rendered a verdict for the defendants. Upon the pleadings and conceded facts at the trial the plaintiff was entitled to a verdict unless a will was established made by the deceased, preventing. There was no such will established upon the trial. A witness was examined on defendants' behalf, who testified, in substance, that he drew a will for the deceased from a memorandum given him; that he signed the will as a witness at her request; that his father was one of the witnesses; that the will was read over

to the deceased and she signed it; other witnesses referred to the fact that a will was prepared, and that they had seen a will, and there was talk about a will in which the deceased participated, but the proof came far short of establishing an instrument that would devise real estate, executed and published according to the forms required by the statute. It is true that proof of a lost will is necessarily secondary, and the law accepts the best evidence that the nature of the case admits of as to its valid execution and contents, and in such a case as this the defense may establish the will by a single credible witness (*Harris* v. *Harris et al.*, 26 N. Y. 433), yet it must be shown that the will was executed with all the formalities required by the statute, and that the testator was of sound mind and under no restraint.

There was an entire absence of proof as to the contents of the assumed will, nothing whatever to show that the plaintiff's apparent title as an heir to one-third of the property sought to be partitioned has been impaired or destroyed. The case, therefore, of the defendants was not established, and it was error not to direct a verdict for the plaintiff. The defendants seek to excuse this omission by alleging that the proof of the execution of this will and its contents was excluded by the court upon the plaintiff's objection, and seem to assume that the plaintiff is estopped thereby, and deprived of the benefit of the objection of the want of such testimony here. The court sustained the objection to certain evidence offered by the defendants, which, if admitted in connection with sufficient other evidence (which the defendants did not offer to show), might tend to establish the will, but the trial court regarded the objection as well taken, and ruled in favor of the plaintiff, and the soundness of that ruling is not before us for consideration. It would be a novel proposition indeed that the needed proof to establish a will or prove its contents by parol could be worked out by way of estoppel, founded on the sustained objection of the opposing party; but assuming that it had been established, that the decedent had made in her lifetime a will excluding the plaintiff from all rights in the property, a further difficulty is presented which has been earnestly pressed upon our attention.

Upon the death of Mrs. Ashley and after thorough search made

no will was found. The last we learn of this alleged will is from the witness, Edward Webster, who says he had drawn a will for the deceased before, and in her last sickness she sent for him about a week before she died. She was confined to her room, and he adds: "She called a young lady to get the will and told her where it was and she went and brought it in. I don't know anything as to where it was except from something they said; I think she told the girl that it was in the bureau. Mrs. Ashley was up stairs at that time; this bureau was in another room, but I don't know whether it was up stairs or not. The girl returned with the will and I examined it." The will was left with the deceased or under her control. This was the last seen of the will so far as the testimony goes. The plaintiff was the granddaughter of the deceased, and she with one or two other relatives of the deceased took care of her for several weeks previous to her death. The defendant Charles O. Ashley, and his daughter and other members of the family, were in attendance more or less upon the deceased during that time. Evidence was given by the defendants tending to show that the deceased had some objection to the plaintiff being there at that time, and that the plaintiff had made expressions of disrespect towards the deceased and had written some letters to the stepmother of the plaintiff ridiculing the deceased, and the deceased had said that the plaintiff was there only for the loaves and fishes, but she would be disappointed. The plaintiff's stepmother was also in attendance upon the deceased, having gone there before the plaintiff, and the plaintiff had expressed in her letters to this stepmother that she hoped that she would get well paid or get the property of the deceased for taking care of her. It appeared also from the defendants' evidence that at one time, some time prior to the death of the deceased, what was called a will was seen in a family Bible that was in one of the rooms of the house. That was before the will was seen by Webster as stated, and that at some time the plaintiff was seen reading this Bible, or looking through it, but it did not appear that the will was there at the time. The plaintiff was seen at one time looking through a book of poems, and the trial court charged the jury that there was evidence showing that the will had been seen in this book of poems. This statement was a misdirection by the court, there being no such evidence in the case. The plaintiff testified that she never saw the will. The same state-

ment was made by the other witnesses who were in attendance upon
the deceased. Several witnesses testified, uncontradicted, to seeing
a letter from the deceased written in December, 1892, to the plain-
tiff, in which the deceased told the plaintiff if she would come and
take care of her she could have what property she had; that she
(the deceased) was sick and alone and had no one to do anything for
her; that her son Charles (the defendant) was a brute; that he never
came near her to do anything for her, and requested an answer. It
appeared that after the death of Mrs. Ashley there was some talk of
settlement between the parties, and the plaintiff proposed that her
interest in the property should go to the defendant Charles for life
with reversion to herself. The witnesses on both sides, as is unfor-
tunately the case in family controversies, exhibited bitterness toward
each other and there was some contradiction as to the facts. Several
witnesses spoke of a letter of instruction that the deceased had exe-
cuted and had among her papers directed to her son Charles, stating
what she wanted done with her property after her death. One witness
who saw it described it as a package of yellow sheets, and this was to be
given to Charles in case the deceased did not live, otherwise it was to be
destroyed. This was during her last illness. This letter of instruc-
tions was not found after her death. The deceased was ninety-one
years of age. Her mind was clear and bright and there was no ques-
tion but that her mental condition was good. Some evidence was
given touching her ability to leave her room after Webster's visit,
but it does not appear but that she could have reached her will and
had control of it if she had so desired after Webster's visit. The
evidence did not disclose who the young lady was that brought the
will nor did it disclose any act on the part of the plaintiff pointing
to the destruction of the will. Such a destruction would be a crime,
and a party is not to be convicted of such an act upon suspicion or
surmise, but only upon substantial evidence proving it.

It is elementary that the law never presumes a will in the absence
of proof. If it be established that the decedent made a will such as
the statute permits to dispose of property, and it was last seen in the
possession or under the control of the decedent, and at his death no
will can be found upon proper search, the presumption obtains that
the will was destroyed by the testator *animo revocandi.* (*In re
Florence,* 2 Bradf. 281; *Idley* v. *Brown,* 11 Wend. 227).

The law upon this subject is so well stated in *Collyer* v. *Collyer* (110 N. Y. 486), in a case much like this in its leading features, that we cannot do better than to reproduce it here : " There is no direct proof that Mrs. Collyer destroyed her will; but the proof, that the will was not found after her death is sufficient proof that she destroyed it *animo revocandi.* When a will previously executed cannot be found after the death of the testator there is a strong presumption that it was revoked by destruction by the testator, and this presumption stands in the place of positive proof. (*Betts* v. *Jackson*, 6 Wend. 173 ; *Knapp* v. *Knapp*, 10 N. Y. 276 ; *Schultz* v. *Schultz*, 35 id. 653 ; *Hatch* v. *Sigman*, 1 Demarest, 519.) He who seeks to establish a lost or destroyed will assumes the burden of overcoming this presumption by adequate proof. It is not sufficient for him to show that persons interested to establish intestacy had an opportunity to destroy the will. He must go further, and show by facts and circumstances that the will was actually, fraudulently destroyed. In *Loxley* v. *Jackson* (3 Phill. Rep. 126) the will was last seen in a small box in the bedroom of the deceased, but was not found after her death, and it was held that the presumption of law was that the testatrix destroyed it *animo revocandi ;* that the law did not presume fraud, and that the burden of proof was on the party claiming under the will. In *Knapp* v. *Knapp* (*supra*) it was held that proof that a will executed by a deceased person was said by him a month previous to his death to be in his possession in a certain desk at his house, that he was then very aged and feeble, that his housekeeper was a daughter having an interest adverse to the will and that the same could not be found on proper search three days after his death, is not sufficient evidence of its existence at the testator's death or of a fraudulent destruction in his lifetime, to authorize parol proof of its contents. The authorities are uniform, and no further citations are needed."

Within the rules thus laid down, from a careful examination of this evidence, it is doubtful whether there was sufficient evidence to justify the jury in holding that the plaintiff or any one else destroyed this will with a fraudulent intent or that it was lost by accident.

The deceased was capricious, as sick and aged people often are; she seemed inclined first to one of her relatives and then to another, and it might well be if she had made a will or given letters of

instruction, that in a moment of perplexity or doubt as to just what she should do with her property, come to the conclusion to destroy all papers and let the law distribute it among her heirs.

The judgment and order should be reversed and a new trial granted, with costs to abide event.

LEWIS, J., concurred; BRADLEY, J., concurred in the result; WERNER, J., not sitting.

Judgment and order reversed and new trial granted, costs to abide the event.