In the Matter of Proving the Last Will and Testament of RACHEL LENOX KENNEDY, Deceased.

FRANCIS HALPIN et al., Appellants.

HENRY VAN RENSSELAER KENNEDY et al., Respondents.

1. WILL — PRESUMPTION AS TO EXISTENCE WHEN LOST OR DESTROYED. No presumption as to the continued existence of a will and codicil arises from the proof of their execution, so as to establish the existence thereof at the time of the testatrix's death, which is essential under the statute to permit the admission to probate of a lost or destroyed will in a Surrogate's Court, but failure to find such will and codicil, after careful and exhaustive search, raises a presumption that the decedent herself destroyed them *animo revocandi*.

2. APPEAL — SURROGATE'S FINDINGS, WHEN CONCLUSIVE.  Findings of fact by a surrogate as to the non-existence of a will and codicil at the time of the testatrix's death and that they were not fraudulently destroyed

during her lifetime, when supported by a presumption as to their destruction by the decedent herself *animo revocandi*, arising from failure to find them, cannot be said to be unsupported by proof and cannot be questioned in the Court of Appeals in the absence of any proof in the record to rebut such presumption.

3. EVIDENCE — DECLARATIONS OF DECEDENT AS TO WILL. The declarations of a decedent concerning her will, or the disposition of her property and her relations to the objects of her bounty, tending to show that she intended to dispose of her property by will and intended to leave as her testamentary papers a will and codicil shown to have been executed by her, are inadmissible to prove their existence or non-revocation at the time of her death.

4. DECLARATIONS AGAINST INTEREST — TENANTS IN COMMON UNDER WILL. While the admissions or declarations of a party to the record may be taken as against himself or another party having a joint interest with him, this rule can have no application to a proceeding to prove a will where other parties are interested in the estate as tenants in common, since one tenant in common cannot admit away the rights of his cotenant and a will cannot be admitted as to one and rejected as to another.

. *Matter of Kennedy*, 53 App. Div. 105, affirmed.

(Argued April 1, 1901; decided May 14, 1901.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, made July 17, 1900, affirming a decree of the Surrogate's Court of the county of New York refusing to admit to probate two instruments purporting to be the last will and testament of Rachel Lenox Kennedy, deceased.

The facts, so far as material, are stated in the opinion.

*John E. Parsons* and *George Richards* for appellants. It was error for the surrogate to refuse to allow the proponents to prove declarations of the testatrix inconsistent with an intention to revoke her will and codicil, and which tended to prove their continued existence down to her death. (*Betts* v. *Jackson*, 6 Wend. 173; *Matter of Marsh*, 45 Hun, 107; *Matter of Oliver*, 13 Misc. Rep. 466; *Collyer* v. *Collyer*, 110 N. Y. 481; *Sugden* v. *Lord St. Lenords*, L. R. [1 Prob. Div.] 154; *Tucker* v. *Whitehead*, 59 Miss. 594; *Matter of Page*, 118 Ill. 576; *Matter of Johnson*, 40 Conn. 587; *Gains* v. *Lizardi*, 3 Wood, 77; *Southworth* v. *Adams*, 11 Biss. 256.)

Revocation or non-revocation of a will is largely a matter of intent, and the intention not to revoke being negative must of necessity be disclosed for the most part by speech. (*Hubbard* v. *Hubbard*, 8 N. Y. 196; *Matter of Nelson*, 141 N. Y. 152; *Smith* v. *Maine*, 25 Barb. 33; *Hunter* v. *Hunter*, 19 Barb. 631; *Ivatt* v. *Finch*, 1 Taunt. 144; *Smith* v. *Smith*, 3 Bing. 29; *Vernon* v. *Vernon*, 53 N. Y. 351; *Rose* v. *Vingut*, 117 N. Y. 204.) The proposed distinction that declarations of the testatrix showing intent not to revoke, to be admissible must be accompanied by an act, is unsound and untenable. (*Matter of Marsh*, 45 Hun, 107; *Matter of Oliver*, 13 Misc. Rep. 466; *Brotherton* v. *People*, 75 N. Y. 159; *People* v. *Sweeney*, 41 Hun, 332; *People* v. *Smith*, 104 N. Y. 491; *People* v. *Corey*, 157 N. Y. 332.)

*William G. Choate, George Zabriskie, J. Archibald Murray* and *Henry B. B. Stapler* for respondents. A will executed by a testator who died after January 1, 1830, cannot be proved as a lost or destroyed will unless it was shown to have been in existence at the time of the death of the testator, or was fraudulently destroyed in his lifetime; and, even if it was accidentally destroyed during the testator's lifetime and without any intention to revoke, it cannot be proved. (*Keery* v. *Dimon*, 153 N. Y. 662; 37 N. Y. Supp. 92; 3 Redf. on Wills [4th ed.], 18; *Schultz* v. *Schultz*, 35 N. Y. 653; *Harris* v. *Harris*, 26 N. Y. 433; *Bowen* v. *Idley*, 6 Paige, 49; *Timon* v. *Claffy*, 45 Barb. 438; *Conroy* v. *Claffy*, 41 N. Y. 619; *Perry* v. *Perry*, 21 N. Y. Supp. 133; *Matter of Nichols*, 40 Hun, 387; *Matter of Paine*, 6 Dem. 361; *Holland* v. *Ferris*, 2 Bradf. 334.) The will or codicil of Miss Kennedy having been kept in her own custody during her life, and upon due and diligent search not having been found after her death, the law presumes that she destroyed them in her lifetime with the intention of revoking them. (*Collyer* v. *Collyer*, 110 N. Y. 481; *Schultz* v. *Schultz*, 35 N. Y. 653; *Knapp* v. *Knapp*, 10 N. Y. 276; *Hard* v. *Ashley*, 88 Hun, 103; *Matter of Nichols*, 40 Hun, 387; *Betts* v. *Jackson*, 6

Wend. 173; *Hatch* v. *Sigman*, 1 Dem. 519; *Bulkley* v. *Redmond*, 2 Bradf. 281; *Freeman* v. *Gibbons*, 2 Hagg. 328.) The surrogate rightly excluded the offers of the proponents to prove declarations of the testatrix. (*Kirkpatrick* v. *N. Y. C. & H. R. R. R. Co.*, 79 N. Y. 240; *Millard* v. *H. T. Co.*, 90 Hun, 607; 157 N. Y. 681.) The declarations of a deceased person are not competent evidence, either to prove that he has made a will, or to prove the continued existence of his will shown otherwise to have been executed, unless when made in connection with an act they become admissible as *res gestœ*. (*Dan* v. *Brown*, 4 Cow. 483; *Jackson* v. *Betts*, 6 Cow. 377; *Grant* v. *Grant*, 1 Sandf. Ch. 237; *Jackson* v. *Kniffen*, 2 Johns. 31; *Waterman* v. *Whitney*, 11 N. Y. 157; *Horn* v. *Pullman*, 72 N. Y. 269; *Eighmy* v. *People*, 79 N. Y. 546; *Marx* v. *McGlynn*, 88 N. Y. 357; *Sanford* v. *Ellithorp*, 95 N. Y. 48.) The declarations of Mr. Kennedy were incompetent and inadmissible. No admissions made by him were binding upon Miss Mary Kennedy, whose interests as an heir at law and next of kin of the deceased were separate and distinct. She was not a joint tenant, but a tenant in common with him in the estate descending to them as heirs at law and next of kin of the deceased, and hence no admission by him can in any way be effectual to defeat her title, and, not being admissible against her, they were not admissible for any purpose. (*Dan* v. *Brown*, 4 Cow. 483; *Grant* v. *Grant*, 1 Sandf. Ch. 235; *La Bau* v. *Vanderbilt*, 3 Redf. 384, 399; *Brush* v. *Holland*, 3 Bradf. 240; *Matter of Baird*, 47 Hun, 78; *Potter* v. *Greene*, 51 Hun, 6; *Clark* v. *Morrison*, 25 Penn. 453; *Pier* v. *Duff*, 63 Penn. St. 59; *Shailer* v. *Bumstead*, 9 Mass. 112.)

O'BRIEN, J. The order from which this appeal is taken affirmed a decree of the surrogate of New York, refusing to admit to probate two instruments, dated, respectively, March 19th, 1895, and November 7th, 1897, purporting to be the last will and codicil of Rachel Lenox Kennedy, who died on the thirty-first day of July, 1898. The proceedings were

instituted by the petition of the legatees and devisees named in the will and one of the executors and resisted by the next of kin and the other executor. The petition alleged that these instruments, copies of which were annexed, had been duly executed and published by the deceased, but were not found after her death, and prayed that the papers be admitted to probate as the last will and codicil of the deceased, under the statute providing for the probate of a will lost or destroyed.

On the hearing before the surrogate, the petitioners produced a large mass of testimony from various witnesses tending, as was claimed, to prove that the instruments set out in the petition had been duly executed by the deceased as her last will and testament, and after a full hearing the surrogate denied the prayer of the petition and refused to admit the instruments to probate. The surrogate found as matter of fact that on the nineteenth day of March, 1895, the decedent, being then of sound mind, executed in full compliance with the requirements of law a paper purporting to be her last will and testament, and that the provisions of this instrument had been clearly and distinctly proved; and the finding then sets out the provisions of the will, by which the deceased disposed of a large estate, devoting the bulk of it to religious or charitable purposes. That the deceased executed the will and codicil substantially as found by the surrogate does not seem to have been disputed and cannot be disputed upon the record now before us. But the surrogate also found that the paper so executed by the deceased as her last will and testament was not in existence at the time of her death, and that the paper so executed by her as a codicil to said will was not in existence at the time of her death; also, that the papers so executed by the deceased as her last will and codicil thereto were not, nor was either of them, fraudulently destroyed in the lifetime of the deceased, and that the deceased died intestate on the thirty-first day of July, 1898. Upon these findings of fact the surrogate held that the instruments set forth in the petition were not, nor was either of them, entitled to be admitted to probate, and, thereupon, the petition was dismissed.

Under the statute a lost or destroyed will can be admitted to probate in a Surrogate's Court only in a case where a judgment establishing a will could be rendered by the Supreme Court. The statute, which provides for the proof of a lost or destroyed will in the Supreme Court, enacts that " The plaintiff is not entitled to a judgment, establishing a lost or destroyed will, as prescribed in this article, unless the will was in existence at the time of the testator's death, or was fraudulently destroyed in his lifetime ; and its provisions are clearly and distinctly proved by at least two credible witnesses, a correct copy or draft being equivalent to one witness." (Code, §§ 1865, 2621.) The petitioners were, therefore, obliged to prove either that the will and codicil presented for probate existed at the time of the testatrix's death or had been fraudulently destroyed in her lifetime. These facts have been expressly negatived by the findings made, and if there is any evidence to sustain them they are conclusive upon this court. The burden of proof was upon the proponents, and the execution of the instruments having been shown, it was claimed that the court should presume that they were in existence at the time of the death of the testatrix unless the contrary was established. It is urged that in such cases the law presumes that a fact continuous in its character continues to exist until the contrary is proved, and that there is a presumption that an instrument shown to have been executed continues in existence. This rule, however, has no application to an ambulatory instrument like a will or codicil. Indeed, as to such an instrument the presumption is the other way. It appears that a careful search was made among the papers and effects of the deceased and neither the will nor the codicil could be found. No testamentary papers having been found after a careful and exhaustive search the presumption arises that the decedent herself destroyed the will and codicil *animo revocandi*. (*Betts* v. *Jackson*, 6 Wend. 173 ; *Collyer* v. *Collyer*, 110 N. Y. 481 ; *Schultz* v. *Schultz*, 35 N. Y. 653 ; *Knapp* v. *Knapp*, 10 N. Y. 276 ; *Hard* v. *Ashley*, 88 Hun, 103 ; *Matter of Nichols*, 40 Hun, 387.) The findings of the surrogate that the will and

codicil were not in existence at the time of her death, and that they were not fraudulently destroyed in her lifetime, are supported at least by this presumption, and, therefore, it cannot be said that they are unsupported by proof. It cannot be claimed that there is any proof in the record to rebut this presumption, and so the proponents are not entitled to question the findings of fact in this court, but must rely upon the exceptions taken at the trial presenting some question of law.

The most important question presented by the exceptions is the ruling of the surrogate excluding the declarations of the deceased concerning her will, or the disposition of her property, or her relations to the objects of her bounty. The proponents offered to prove by various witnesses numerous declarations made by the testatrix down to the time of her death, which they claimed tended to show that she intended to dispose of her property by will, and intended to leave as her testamentary papers the will and codicil in question, and giving directions regarding their whereabouts. This testimony was objected to as incompetent to prove any of the facts in issue, and it was excluded by the surrogate, to which ruling an exception was taken. The learned counsel for the proponents contends that this proof was admissible, and if he is correct in this position the error of the court in excluding it was clearly material. The question is not entirely free from difficulty, but whatever doubt exists concerning the correct rule arises, not from the nature of the question itself, but from views and expressions to be found in some of the adjudged cases. The fact in issue was whether the instruments in question were physically in existence at the time of the death of the testatrix, and, if not, whether they had been fraudulently destroyed during her life. If the evidence offered did not prove, or tend to prove, this issue it was properly excluded. If the existence of a will may be established by proof of the declarations of the deceased, then it is difficult to see why the execution and contents of the instrument may not be established by like proof, providing two or more witnesses testify to the declarations, and thus testamentary dispositions of property

could be established wholly by oral evidence consisting entirely of the declarations of the deceased. It is true that in the present case there is no dispute with respect to the execution or contents of the will, but if the principle is established that the existence of the will at the time of death may be shown by oral proof of such declarations, it must follow that any other fact required by the statute may be shown in like manner. The principle involved in the question, therefore, is whether the oral statements or declarations of a party before death are admissible to establish a testamentary disposition of property. The contention of the learned counsel for the proponents is that they prove, or tend to prove, that the deceased had no intention to revoke her will, and, hence, that it was in existence at the time of her death. However plausible this proposition may seem, it asserts a rule of evidence which is open to the objection that through its complete operation a will or codicil may be established without the production of any writing whatever. The rule could not in reason be limited to a case like this, where there is proof of the execution by the deceased of a written will, since the declarations of the deceased that a will had been executed are of as much probative force as declarations that it had not been revoked.

We think that the declarations of the deceased were not competent to prove that the will or codicil was in existence at the time of her death. The whole course of legislation in this state from the earliest times to the present day, concerning the execution and revocation of wills, discloses a clear purpose to substitute in all cases written for oral proof of a testamentary disposition of property and to sweep away all parol proof of testamentary intentions, and, hence, to exclude statements or declarations of the deceased. In the early legal history of the state unwritten wills were valid, and, consequently, the oral statements or declarations of the deceased could have been received as proof of testamentary intention. By an act passed March 3d, 1787, to reduce the law concerning wills into one statute (Laws of N. Y. p. 445, ch. 47) it

was provided that no nuncupative will should be good when the estate disposed of exceeded thirty pounds unless proved by three witnesses as made under various conditions and restrictions there expressed. (§ 15.) The law of wills was again revised in 1801 (Laws of 1801, ch. 9), and again by the Revised Laws of 1813. The first provision in regard to the proof of lost or destroyed wills is found in the Revised Statutes of 1830 in substantially the same form that it now exists in the Code. The tendency in all this legislation with respect to wills has been towards greater certainty of proof, and the substitution of written for oral proof of testamentary intention or of revocation. The Revised Statutes abolished whatever remained of the law recognizing unwritten or nuncupative wills except in the case of a soldier while in actual military service and a mariner while at sea. (2 Rev. Stat. p. 60, § 22.) It is perhaps not surprising that in the evolution of the law of wills and the change from unwritten to written evidence of testamentary intentions, some of the usages and traditions existing during the period when unwritten wills were valid should survive. But in this state, at least, it seems to us that the courts have applied the rules of evidence with regard to oral declarations concerning testamentary intentions in such a manner as to conform to those general and sweeping changes in the statute law, which were intended to substitute written for unwritten evidence in establishing testamentary dispositions of property.

The oral statements or declarations of the deceased are still admissible for some purposes. They are admitted to prove the due publication of a written will. They are also admissible upon an issue with respect to the mental capacity of a person to make a will, since such declarations tend to reveal the true condition of his mind with respect to the subject-matter of the controversy, and have some bearing upon the question whether a paper purporting to be his will is really the production of his own mind or of another. We are now dealing with a statute which provides only for the probate of a lost or destroyed will, and the instrument cannot be admitted

to probate except upon proof either that it existed at the time of the death of the person whose will it purports to be, or was fraudulently destroyed in his lifetime. (*Keery* v. *Dimon*, 37 N. Y Supp. 92; affd., 153 N. Y. 662.) Controversies sometimes arise concerning the ownership of property in which it is necessary to establish the title through a will which has been lost or destroyed. In such cases the will may be proved by any evidence sufficient at common law or in equity, since the statute now under consideration applies only to direct proceedings for the probate of the will. (*Harris* v. *Harris*, 26 N. Y. 433.) That is the character of the proceeding in this case, and the precise fact which the proponents were bound to prove was that the will was in existence at the time of the death of the testatrix.

It is assumed by counsel for the proponents that her declarations tending to show that she had not revoked or had no intention to revoke her will is proof that it must have been in existence at the time of her death. The issue is thus changed from one with respect to the existence of the will at the time of the death to one concerning revocation before death. If it be conceded that the question of revocation is involved in the issue whether the instrument is in existence at the time of the death, it does not follow that the declarations of the testatrix are admissible to prove such revocation. On the contrary, the great weight of authority in this state is to the effect that the declarations of a deceased person are not competent evidence either to prove that he has made a will or to prove the continued existence of a written will, unless made in connection with some act under such circumstances as to become a part of the *res gestæ*, and declarations of the deceased tending to show that a written will has been revoked are open to the same objection, unless they accompany some act which the statute prescribes as a requisite of revocation, and then they are received as in other cases as part of the *res gestæ*. (*Dan* v. *Brown*, 4 Cow. 483 ; *Jackson* v. *Betts*, 6 Cow. 377 ; *Grant* v. *Grant*, 1 Sandf. Ch. 237; *Jackson* v. *Kniffen*, 2 John. 31; *Waterman* v. *Whitney*, 11 N. Y. 157 ; *Eighmy* v. *People*,

79 N. Y. 546 ; *Horn* v. *Pullman,* 72 N. Y. 269 ; *Marx* v. *McGlynn,* 88 N. Y. 357 ; *Sanford* v. *Ellithorp,* 95 N. Y. 48 ; *Voorhis* v. *Voorhis,* 15 Barb. 119.)   The general rule is that where an act is done, to which it is necessary or important to ascribe a motive or a cause, what was said by the actor at the time, from which the motive or the cause may be collected, is part of the *res gestæ* and may be given in evidence. (*Swift* v. *Mass. Mut. Life Ins. Co.,* 63 N. Y. 186 ; *Waldele* v. *N. Y. C. & H. R. R. R. Co.,* 95 N. Y. 274; *Butler* v. *Manh. Ry. Co.,* 143 N. Y. 417.)   It is upon this principle that the declarations of deceased persons concerning the contents, existence or revocation of a written will are received in evidence in a proceeding for its probate.   It will be seen upon a careful examination of the cases cited and especially the early cases of *Dan* v. *Brown* and *Jackson* v. *Betts* (*supra*), followed later by the case of *Waterman* v. *Whitney* in this court, that the proof of declarations offered in this case and excluded was inadmissible.   It can hardly be said that the question is still an open one, at least as to the declarations that a written will has been in some way revoked.

   In the present case the proof was offered in order to show that a written will had *not been revoked,* and the principal authority in this state cited to support the proposition is a comparatively recent case.   (*Matter of Marsh,* 45 Hun, 107.) The ability and eminence of the judges who participated in that decision entitle it to very respectful consideration, and, therefore, it has been carefully examined.   We do not think that this single determination of the Supreme Court is sufficient to shake the authority of the prior cases, nor the principles laid down in them and so often approved by this court.   There are some features of that case, however, that should be more distinctly noticed.   (1) The case contained no findings of fact or law or any exceptions to the general conclusion, and presented no question whatever on the merits.   (2) There was competent evidence in the case, apart from any declarations of the deceased, that her son after her death took the will from the house where she died and suppressed or destroyed

it. The decision of the court sustaining the decree of the surrogate admitting the will to probate as a lost or destroyed will was, therefore, correct on the merits, since the conclusion of the surrogate necessarily implies a finding of fact that the will had been destroyed or purloined by the son after the mother's death. (3) But it was distinctly admitted by Judge BRADLEY, who spoke for the court, and after reviewing the cases in this state, that *on a question of revocation* no declarations of the testator are admissible except such as accompany the act by which the will is revoked, such declarations being received as a part of the *res gestæ* and for the purpose of showing the intent of the act (p. 111). (4) The decision in that case, therefore, rests entirely upon some assumed distinction between declarations tending to prove *revocation*, which the learned court held to be incompetent, and declarations tending to prove *non-revocation*, which it held in that case to be admissible. The learned judge was careful to say that the question whether this distinction was substantial was one of doubt and difficulty. He then proceeds to cite English cases in favor of the admissibility of the evidence, and among them the well-known case (*Sugden* v. *Lord St. Leonards*, L. R. [1 Prob. Div.] 154), and upon the authority of these decisions and others from the courts of our sister states, reaches the conclusion, "with some hesitation," that the evidence was competent.

It is, I think, very obvious after a fair analysis of that case, that it cannot be held to have disturbed the general current of authority in this state against the admission of the declarations of deceased persons as proof of testamentary intention. The decision in that case rests upon a distinction which does not exist. When the learned court admitted, as it did, that the declarations of the testator, unaccompanied by any act, were incompetent to prove revocation, there was no basis left in reason or law for the conclusion that they were admissible to disprove the same fact. There cannot, in the nature of things, be any distinction in principle between declarations of a deceased person to prove an act of revocation and like declarations to disprove the same act. The probative value

of the declarations are the same in either case. The danger of substituting oral for written proof of testamentary dispositions of property is as great in one case as in the other. The distinction upon which the *Marsh* case rests, when applied to the case at bar, would have required the surrogate to admit proof of the declarations of the deceased tending to show that she had *not* revoked the will when offered by the proponents, and to exclude such proof tending to show that she *had* when offered by the contestants, and, hence, it must be apparent that such a distinction is not only without any foundation in principle, but utterly incapable of any reasonable application in practice.

The learned counsel for the proponents has cited some cases from the courts of other states that doubtless give some support to his contention. The value of these cases as authority depends very much upon the system of statute law existing in the particular jurisdiction concerning the execution, revocation and proof of wills. It will be found, I think, after careful examination, that the decisions in other states are based largely upon the terms of local statutes that differ essentially from our own. In many of the states there is no statute relating to the probate of lost or destroyed wills. In some of them there are statutes relating to that subject, but quite different from ours. Here, as we have seen, the inquiry is limited to three specific facts namely : The execution of the will, its existence at death, *or* the fraudulent destruction during the testator's life. In those jurisdictions where local statutes permit greater latitude of inquiry upon the issue concerning testamentary dispositions in a lost or destroyed will, the decisions of the courts are not applicable here. This remark applies with equal force to the English cases and especially to the leading case of *Sugden* v. *Lord St. Leonards* (*supra*), which doubtless gives some support to the proposition that such declarations may be received. In regard to that case it may also be observed that it is in apparent conflict with a prior decision in the same jurisdiction on the same question (*Marston* v. *Roe*, 8 Ad. & El. 14), and has been somewhat weakened

by the discussion in subsequent cases. (*Woodward* v. *Goulstone*, L. R. [11 App. Cases] 469; *Atkinson* v. *Morris*, L. R. [Prob. Div. 1897] 40; *Doe* v. *Palmer*, 16 Ad. & El. [N. R.] 757.) Moreover, the reasoning in support of the admissibility of declarations of deceased persons is in conflict with the views of this court. (*Waldele* v. *N. Y. C. & H. R. R. R. Co.*, *supra*.) But the decisions in this state, to which we have referred, are conclusive upon the question and must be followed whatever the law may be in other jurisdictions. They are supported not only by reason and good sense, but stand firmly upon the safe and wholesome policy, always favored in this state by the courts and the legislature, of substituting in every possible case written for oral proof of testamentary intentions.

The Supreme Court of the United States has recently passed upon the questions involved in this case, in a decision to which our attention was called after this opinion was written and the case decided. In the opinion of Mr. Justice PECKHAM the cases in this and in other states are carefully reviewed, and after a thorough examination of all the authorities, the conclusion of the court is in accordance with the views herein expressed. As I read that case it is a decision of the highest court in the land that the declarations of the deceased, when not a part of the *res gestæ*, are not admissible to prove the execution of a will or its revocation, or to rebut the presumption of revocation from the fact that no will is found after death. If any authority is needed beyond the decisions of the courts of this state, it seems to me to be furnished by the very learned and able opinion in that case, which was adopted by the majority of the court. (*Throckmorton* v. *Holt*, Supr. Ct. Rep. vol. 21, p. 474; 180 U. S. 552.)

We think that the declarations of the deceased were not competent to prove the existence of the will at her death, and that there was no legal error in the decision of the surrogate excluding them.

There is another question in the case which perhaps deserves some notice. We have already noticed the fact that one of the executors named in the will joined with the legatees and

devisees in the petition for the probate of the two instruments. The other executor named was the nephew of the deceased, being the son of a deceased brother. This nephew and a sister of the testatrix were her sole heirs at law and next of kin, and both resisted the application to admit the will to probate. The nephew had been appointed the administrator of the estate upon the supposition that the deceased died intestate. He was not only a party to the proceeding but was personally interested in the estate which the will, if established, would transfer to others. On the trial before the surrogate counsel for the proponents sought to prove by various witnesses the statements, admissions or declarations of the nephew in regard to the provisions of the will made before the death of the testatrix, and in conversations and interviews with her and also alleged statements, admissions or declarations relating to the will and codicil after her death. The questions were objected to, the objections sustained and an exception was taken to the ruling. It is not clear from the record that the questions called for any fact material or relevant to the issue under any circumstances. But there was one clear legal ground which justified and required the surrogate to rule as he did. The general doctrine is doubtless correct that the admissions or declarations of a party to the record may be taken as against himself or another party having a joint interest with him, but this rule can have no application to a proceeding to prove a will where other parties are interested in the estate as tenants in common. In this case the admissions or declarations of the nephew could not bind the sister, and, since upon proof of a will there can be but one decree, either of rejection or of probate, the declarations of one of the parties cannot, from the very nature of the case, be received as evidence without prejudice to the rights of the other. One tenant in common cannot admit away the rights of his cotenant. Since the will could not have been admitted as to the sister and rejected as to the nephew, the admissions or declarations of the latter were not admissible. (*Dan* v. *Brown*, 4 Cow. 483, 492; *Grant* v. *Grant*, 1 Sandf. Ch. 235;

*Brush* v. *Holland,* 3 Bradf. 240 ; *Matter of Baird,* 47 Hun, 78 ; *Potter* v. *Greene,* 51 Hun, 6, 8 ; *Clark* v. *Morrison,* 25 Penn. St. 453 ; *Pier* v. *Duff,* 63 id. 59 ; *Shailer* v. *Bumstead,* 99 Mass. 112, 127; 1 Greenl. Ev. § 176.) The respective interests of the next of kin were not joint, but each would hold his share in severalty. There was no privity between the parties such as would permit the admissions or declarations of one to be received as evidence against the other. The power of the court was limited to a judgment against or in favor of all the parties. There could be no separate or qualified judgment, but the instruments had to be either admitted or rejected. Under these circumstances, the admissions and declarations of the nephew were properly excluded.

There are no other questions in the case that call for discussion or that this court can review. The rulings of the surrogate upon the questions to which exception was taken were, we think, correct. The order of the court below was right and must be affirmed, with costs to all parties payable out of the estate.

PARKER, Ch. J., HAIGHT, LANDON, CULLEN and WERNER, JJ., concur; GRAY, J., not voting.

Order affirmed.