In the Matter of the Probate of the Alleged Last Will and Testament of MARY ANN CAMPBELL, Deceased.

NORMAN CUSHMAN, Individually, and NORMAN CUSHMAN and DAVID DONALDSON, as Executors Named in Said Will, Appellants; RACHEL A. DUSTIN and JANE A. FAIRCHILD, Respondents.

*Will — declarations of the principal beneficiary as evidence of undue influence — they are not admissible where other beneficiaries under the will would not take in case of intestacy.*

Where the probate of a will is contested upon the ground that the will was procured by the undue influence exercised by the principal beneficiary, evidence offered on behalf of the contestants of declarations and admissions made by the principal beneficiary as to his relations with the decedent and as to her condition of mind, is inadmissible when it is shown that there are other persons who would take as tenants in common with the principal beneficiary under the will, and who would not take in case the intestacy of the decedent was established, and it does not appear that the admissions and declarations were made in their presence.

APPEAL by Norman Cushman, individually, and Norman Cushman and David Donaldson, as executors named in an instrument purporting to be the last will and testament of Mary Ann Campbell, deceased, from a decree of the Surrogate's Court of the county of Franklin, entered in said Surrogate's Court on the 24th day of October, 1900, denying probate of an instrument alleged to be the last will and testament of Mary Ann Campbell, deceased, on the

ground that the execution of the same was procured by the undue influence of Norman Cushman, the principal legatee therein named.

*John P. Kellas*, for the appellants.

*Gordon H. Main*, for the respondents.

HOUGHTON, J.:

The alleged will was executed about a year prior to the death of the testatrix, at the office of the scrivener some distance from her home, to which place she was accompanied by Norman Cushman, the principal legatee. The scrivener was his cousin, not a lawyer, but accustomed to draw papers for persons in his locality. Prior wills had been drawn by the attorney who ordinarily did business for the deceased.

At the time of the execution of the will, the deceased was seventy-five years of age. The evidence discloses that she was vigorous for her years, and attended to her own business affairs, of managing her farm and making investments of such money as she had. The farm was worth about $2,000, and she left besides $10,000 or $12,000 in cash and securities.

Norman Cushman was a young man about thirty-two years of age, who had worked for her some years under various arrangements as to compensation. She had lived alone with him, and the evidence discloses that she was very solicitous about his leaving her, either because she placed great value on his services or had conceived a peculiar fondness for him.

She had two daughters married and living in her vicinity, who are the contestants and the present respondents. She does not appear to have been on especially friendly terms with her children, nor do they appear to have been especially solicitous for her welfare, possibly on account of her relations with Cushman.

By the alleged will, $3,000 of her personal property was divided between two daughters and a grandchild (daughter of one of the respondents), and a nephew, in various proportions, and the balance of her personal property was given to Cushman as is expressed because of his many kindnesses and solicitous care. The farm was eventually to be sold and divided between her daughters, the income meanwhile to belong to Cushman.

The surrogate found upon request on settlement of the case that the deceased was of sound mind, memory and understanding, and competent to execute a will, except for the undue influence exercised over her by Norman Cushman, the principal legatee.

This situation of a person of ordinarily sound mind being unduly influenced in the making of a will, made a very delicate question of fact for consideration by the surrogate. Any errors in the admission or exclusion of evidence under such circumstances cannot be said to be harmless.

A large amount of evidence was introduced before the surrogate showing the relations existing between the deceased and Cushman, and tending to show his influence over her, as well as showing her mental condition and state of mind toward him. Against the objection of the proponents, however, the surrogate permitted the declarations and admissions of Norman Cushman to be received as to his relations with the deceased, and as to the condition of mind and lack of mind of the testatrix.

Cushman was the principal legatee under the will, but there were other legatees who would not take in case the intestacy of the deceased was established. He was not, therefore, the only person interested in sustaining the will. The other legatees, the nephew and grandchild of the deceased, were tenants in common with him under the will, and it is not pretended that the admissions were made in their presence.

The proponents, as executors named in the instrument, represented the nephew and grandchild as well as Cushman himself in the proceedings to establish probate of the will. Cushman could not be eliminated from the instrument and leave it good in behalf of the nephew and grandchild. It must stand or fall as a complete instrument. The doctrine that admissions or declarations of a party may be taken as against himself has no application to a proceeding to prove a will where other parties are interested in the estate as tenants in common, since the will cannot be admitted as to one and rejected as to the other. (*Matter of Kennedy*, 167 N. Y. 163; *Matter of Van Dawalker*, 63 App. Div. 550.) The admission of this evidence constitutes an error which calls for a reversal of the decree.

Other errors, in the permitting of witnesses to give opinions as to

the condition of mind of the testatrix and a refusal to receive a written contract between the deceased and Cushman are alleged, but it is unnecessary to consider them.

Inasmuch as we have concluded that there must be a new trial, it is unnecessary to comment upon the facts further than to bring the parties within the provisions of section 2588 of the Code of Civil Procedure so that the new trial may be had in the Supreme Court before a jury. We have examined the evidence with considerable care, and think that the interests of justice require that this case should be reviewed in the manner required by the above section of the Code. We refrain from discussing the evidence and from giving our views thereon, so that on a new trial the parties will be neither embarrassed nor benefited, nor the deliberations of the jury affected, by the views of this court upon the questions of fact involved.

The decree of the surrogate is reversed and a new trial directed before a jury, at a Trial Term of the Supreme Court, pursuant to the provisions of section 2588 of the Code of Civil Procedure, of the questions of fact arising between the parties to be stated in the order of reversal, with costs of the appeal to the appellants to abide the event.

PARKER, P. J., EDWARDS and CHASE, JJ., concurred; SMITH, J., concurred in result.

Decree of the Surrogate's Court reversed and new trial ordered upon the issues between the parties, before a jury at a Trial Term of the Supreme Court to be held in Franklin county, with costs to appellant to abide event; the order to contain the following questions of fact to be tried by the jury:

*First.* Was the instrument dated April 2, 1898, duly signed, published and executed by Mary A. Campbell as her last will and testament?

*Second.* If the same was so executed, was she of sound mind and memory and competent to execute the same?

*Third.* Was the execution of the same procured by the fraud, restraint or undue influence of Norman Cushman?

*Fourth.* Were the provisions in said will, other than those in favor of Norman Cushman, procured by undue influence?