In the Matter of the Estate of TOM H. ROBINSON, Deceased.

Surrogate's Court, Erie County, June 29, 1938.

*Leon W. Van Deusen* [*Charles R. Blair* of counsel], for the petitioner.

*Edwin B. Kenngott* [*Walter M. Bernhardt* of counsel], for Emma Robinson, widow.

*J. M. Browning Crowell, in pro per.*

HART, S. The last will and testament of Tom H. Robinson, who died February 13, 1938, was executed in duplicate and dated March 15, 1929. One copy was retained by Mr. Van Deusen, the attorney who drafted the will, and the other by the decedent. The copy retained by the attorney was filed for probate in this court. Between the first day of the hearing, held on March 17, 1938, and the resumed date, March 31, 1938, an unsuccessful search was made for the copy claimed to have been in the possession of the deceased during his lifetime.

The attorney for the proponent claims that the will in his possession is the original, and considers the carbon copy delivered to the testator merely an executed copy.

Reference is made at this time to the testimony of the draftsman of the will (found on p. 4):

" Q. Was the will dictated to Miss Farrell?   A. Yes.

" Q. And this was the only draft of the will that was prepared? A. No.   We always make two wills.

" Q. This will was made in duplicate?   A. I believe it was.   I would not call it duplicate.   We call them executed copies.   There was a carbon copy made at the same time and delivered to him.

" Q. Was that carbon copy signed by him?   A. I can't state positively but it is customary to have it signed.

" Q. The attestation clauses were signed by you and Miss Farrell?   A. Yes."

Again (at p. 7):

" Q. This instrument that you refer to as the original was executed the same time as the duplicate?   A. This is the original.

" Q. The other that you refer to as a copy was also executed at that time?   A. I believe it was.   It is customary for us to always make two and give one to the testator or testatrix."

Practically the same testimony was given by Mrs. Hendrick, formerly Miss Farrell, who was at that time stenographer for Mr. Van Deusen, and one of the subscribing witnesses.

Later in the course of the hearing the following letter was produced by the attorney for the proponent:

" LANCASTER, N. Y., *July* 7th, 1930.

" MR. L. VANDEUSEN:

" Dear Friend: When you have read the enclosed which I obtained in Buffalo from my sister, will you please see to it that my will can be made to stand just as it is.   You have a copy of it.   You will notice this new law does not go into effect until September.   I did not know but what you might not have seen the new law so that is why I am forwarding the enclosed.   You may keep it.   I will drop in and see you the next time I come to Canandaigua.

" Thanking you in advance and with kindest regards,

" Yours very truly,

" TOM H. ROBINSON."

Apparently the deceased considered the duplicate copy in his possession the original and the one in the lawyer's possession a duplicate copy.   If there is to be any distinction drawn between the one in the lawyer's possession and the one in the testator's possession, this court believes that inasmuch as it is the testator's will and not the lawyer's, his designation should bear more weight than the attorney's.

However, we are principally concerned at the moment with the contention of the contestant that inasmuch as duplicate copies of the will were executed they must be produced in a probate proceeding to admit the will to probate.

It was stated in *Crossman* v. *Crossman* (95 N. Y. 145, at p. 152):

" As soon as it is brought to the attention of the surrogate that there are duplicates of a will presented to him for probate, it is proper that he should require both duplicates to be presented, not for the purpose of admitting both as separate instruments to probate, but that he may be assured whether the will has been revoked and whether each completely contains the will of the testator."

Was the will of Tom H. Robinson revoked? It is well established that the revocation of the example in testator's custody works a revocation of the duplicate will, and that a will proven to have had existence and last in the possession of the decedent and not found at the death of the testator was destroyed *animo revocandi.*

It was stated in *Matter of Kennedy* (167 N. Y. 163, at p. 168):

" The petitioners were, therefore, obliged to prove either that the will and codicil presented for probate existed at the time of the testatrix's death or had been fraudulently destroyed in her lifetime. These facts have been expressly negatived by the findings made, and if there is any evidence to sustain them they are conclusive upon this court. The burden of proof was upon the proponents, and the execution of the instruments having been shown, it was claimed that the court should presume that they were in existence at the time of the death of the testatrix unless the contrary was established. It is urged that in such cases the law presumes that a fact continuous in its character continues to exist until the contrary is proved, and that there is a presumption that an instrument shown to have been executed continues in existence. This rule, however, has no application to an ambulatory instrument like a will or codicil. Indeed, as to such an instrument the presumption is the other way. It appears that a careful search was made among the papers and effects of the deceased and neither the will nor the codicil could be found. No testamentary papers having been found after a careful and exhaustive search the presumption arises that the decedent herself destroyed the will and codicil *animo revocandi.* (*Betts* v. *Jackson,* 6 Wend. 173; *Collyer* v. *Collyer,* 110 N. Y. 481; *Schultz* v. *Schultz,* 35 id. 653; *Knapp* v. *Knapp,* 10 id. 276; *Hard* v. *Ashley,* 88 Hun, 103; *Matter of Nichols,* 40 id. 387.) "

In *Matter of Shields* (117 Misc. 96), cited by the petitioner, both examples were under the control of the testator.

In *Crossman* v. *Crossman* (95 N. Y. 145) both duplicates were in existence.

In *Matter of Watson* (58 Hun, 608) a will was written apparently in longhand and executed. The following day a will identically the same was typewritten and executed. The testator at the time of the execution of the will took the will with him, and later informed the attorney that drew the will that he had destroyed the handwritten will. These facts are at a considerable variance with the instant case, as are also the facts in *Managle* v. *Parker* (75 N. H. 139; 71 A. 637).

The proponent offered in evidence the testimony of Dr. Suess as to the declarations of the deceased as part of the proof of non-revocation. This court believes his testimony is incompetent and is, therefore, stricken from the record. Even if allowed to stand, there is not sufficient evidence to overcome the strong presumption of revocation.

There is no presumption of a continued existence of a will. Indeed, as to such an instrument, the presumption is the other way. A will not being found after a careful and exhaustive search, the presumption arises that the decedent himself destroyed the will with the intention of revoking it. (Surr. Ct. Act, § 143; *Collyer* v. *Collyer*, 110 N. Y. 481; *Matter of Kennedy*, 167 id. 163; *Knapp* v. *Knapp*, 10 id. 276; *Matter of Cunnion*, 201 id. 123.)

As was well stated in *Matter of Schofield* (72 Misc. 281), the court should carefully distinguish a case in which any one of the instruments is in the possession of the testator and cannot be found, and more strongly so where the testator has elected himself to designate the example in the hands of a lawyer the copy and the one in his possession the original.

Applying the established presumption that a will proven to have had existence and lastly in the possession of the testator is deemed destroyed *animo revocandi*, probate of the will of Tom H. Robinson, deceased, is, therefore, denied.

Submit decree.