S. Samuel Di Falco, S.
Although the objections to the probate of the will formulate all of the usual issues, the argument of counsel is addressed solely to the question of revocation of the will. The court is satisfied on the evidence that the testator executed his will on January 22, 1959 in compliance with all of the requirements of section 21 of the Decedent Estate Law, that at the time of executing the will he was of sound mind, and that he was not under any restraint. The will must, therefore, be admitted to probate unless the decedent duly revoked it.
The will was in the possession of the decedent. After his death the contestant and one of the proponents went to the decedent’s apartment to search for his military discharge. In the bedroom of the decedent’s apartment they found a trunk which was locked. Neither of them had a key to the trunk, and it was forcibly opened by the contestant at the request of the proponent. They did not then find the paper for which they were searching. Some time later the proponent returned to the apartment and examined the contents of the trunk. Among other things, she found a large plastic bag or envelope which contained a number of papers, one of which was the decedent’s will of January 22, 1959. The will was in an envelope marked “ My Will ” in handwriting which the proponent believes is that of the decedent. Inside that envelope were two separate parts of what was an ordinary business envelope, measuring 9% by 4 inches, on which was imprinted the name, of the decedent’s attorney. Typed on the front of that envelope were the words “ Last Will and Testament of Merritt Bonner ”. The envelope had been sealed, and the gummed flap still adhered tightly to the body of the envelope. However, the envelope was in two parts. The line of the cut ran from the bottom of the envelope through the top in a very slight oblique to the left. One of the parts was approximately one third of the original envelope; the *296 other, two thirds. In the two portions of the envelope were two portions of the will which the decedent had executed on January 22, 1959." The. attorney for the proponent had repaired the will with, scotch tape before, filing it with the court, but the line of the. cut on the will, is visible. When the will is placed in each part of the sévered envelope, the line of the cut on the will corresponds exactly with the line of the cut on both portions of the envelope, on the front and on the back. It is clear beyond any reasonable doubt that the will was in the envelope and both were severed in the very same operation.
An-examination-of the two parts of the envelope'and of the will makes it clear that they were cut by a sharp instrument and were not torn. The somewhat jagged edges of the envelope would make it appear that a scissors had been used. The will consists of four typed pages of legal cap paper stapled together under a white legal back. When the will is opened full length the cut would run from the very top of the white back to the bottom of it, cutting the pages lengthwise and running slightly to the left of the center of the pages. The cut did not run through any part of the decedent’s signature. TIis signature is still intact on the right hand and larger portion. The signatures of the two subscribing witnesses were below and to ■ the left of the decedent’s signature and they have been cut in such a way that a portion of each signature is on one part and the balance of the signature on the other part of the will. The lines of the cut and a comparison with the cut edges of the envelope make it clear that the will was cut while it was folded.
The burden of proving revocation of a will rests upon the contestant. (Matter of Crouse, 205 App. Div. 135, affd. 238 N. Y. 583; Matter of Malherbe, 112 N. Y. S. 2d 86 ; 3 Page, Wills [Bowe-Parker Rev.], p. 695.) It has been held that if the will was in the testator’s custody and was found after his death cancelled, mutilated or defaced, the presumption arises that the testator himself' performed the act and that he did it animo revocandi (Matter of Hopkins, 172 N. Y. 360, 363; Matter of Monette, 282 App. Div. 987; Matter of Rosenberg, 205 Misc. 528.) It is patent that there are in that statement two separate inferences, first of the person who performed the act, and secondly of the intention that motivated and accompanied the act. The separation of the two inferences is more clearly marked in Professor Page’s statement of the rules: “ If the will has been in the custody of the testator, and, on his death, it is found to be torn, canceled, and the like, the presumption will be that testator himself tore -it or. cancéled it and, if the facts are such to suggest a reasonable inference of intention to revoke, that testator did *297 such act with the intention to revoke the instrument.” (Page, Wills, supra, pp. 700-701.) The inference that the act was that of the testator is a reasonable one and is very generally recognized. Everyone here concedes that the act was performed by the decedent and by no one else. Hence there is no issue on that point. With respect to the intention accompanying the act, it is apparent that however the rule is phrased by the authorities or the decisions, the facts and the circumstances of the particular case determine whether an inference or presumption can fairly be drawn and, if- it can, whether it be strong enough to shape the result. (Davids, New York Law of Wills, p. 633.) The presumption of destruction animo revocandi has been said to be “ a mere inference of fact ” which may be overcome by circumstantial evidence. (Matter of Mittelstaedt, 278 App. Div. 231, 232-233.) The act which the statute (Decedent Estate Law, § 34) recognizes as sufficient to effect revocation (burning, tearing, canceling, obliterating or destroying) must in a particular case be of such a character as to reflect in a physical way an interior intent and purpose on the part of the testator to annul his will. (Matter of Barnes, 76 Misc. 382, 384.) “ Their form and extent or other essence are all totally unimportant so long as they are a physical token of the inward intent. ” (Id., p. 385.) The word “ torn ” is deemed to include a cutting. (3 Page, Wills, supra, p. 357; Matter of Halpern, 32 Misc 2d 808; Matter of Parker, 100 Misc. 219, 228.) Conversely, their form and extent are unimportant unless they are a physical token of an interior intent to revoke.
If the will of this testator had been cut in two by the deliberate act of the testator, we should have no difficulty in drawing the inference that it was his purpose to annul it. Whether he cut it after looking at the legend on the front of the envelope or cut it with the back of the envelope facing him, are matters that cannot be determined autoptically. What is certain from the testimony, however, is that the cut instrument, still in parts of the original envelope, was placed in a whole envelope and that the words “ My Will ” were indorsed on the latter envelope by the decedent. Such an indorsement is indicative of continued existence rather than of annulment. Moreover, the envelope was placed in a large plastic envelope with papers which the decedent preserved. One who planned to throw an instrument away might cut it at random without looking to see where the cut ran, or without removing something of significance, but one who carefully preserves the instrument would undoubtedly do something more definitive to impair the integrity of the instrument if his purpose had been to end- its legal effectiveness. The man *298 ner of its preservation and the manner in which it was cut are circumstances which prevent a reasonable inference of animus revocandi to be drawn from the mere'fact of the severance of the envelope and will.
The proponent offered testimony by two witnesses of statements by the decedent that he had been cutting up insurance papers and by mistake he had cut his will. This testimony was received subject to a motion to strike it out as incompetent and inadmissible. One of the witnesses was contestant’s sister. She recounted a conversation with the decedent in which she advised him that it was just like cutting dollar bills; “ if it is cut and you have two parts it is still a will. ’ ’
The courts have disagreed over the admissibility of subsequent declarations of a testator in respect of the intent or purpose accompanying an alleged revocatory act. (3 Page, Wills, supra, §§ 29.144-29.146; 6 Wigmore, Evidence [3d ed.],§§ 1736-1737; State of Mind to Prove an Act, Hutchins and Slesinger, 38 Yale L. J. 283; Admissibility of declarations by testator on issue of revocation of will, Ann. 79 A. L. R. 1493.) Whatever the rule be in other States, the language of the New York decisions support the view that declarations of a testator are not admissible to_ prove revocation of his will or its continued existence (that is, nonrevocation) unless they are part of the res gestee. (Matter of Kennedy, 167 N. Y. 163, 172; Matter of Staiger, 243 N. Y. 468, 472; Matter of Suarez, 131 N. Y. S. 2d 419, 422, affd. 283 App. Div. 774; Matter of Fogarty, 155 Misc. 727.)
Matter of Kennedy was a proceeding to probate a lost or destroyed will. The will could not be found after the decedent’s death. The proponents offered to prove declarations of the testatrix down to the time of her death, tending to show that she intended to leave as her testamentary papers the very will and codicil in question and gave directions as to their location. The Court of Appeals held that these declarations were not competent to prove that the will or codicil was in existence at the time of her death. The “ great weight of authority in this state ”, said the court (p. 172), “ is to the effect that the declarations of a deceased person are not competent evidence either to prove that he has made a will or to prove the continued existence of a written will, unless made in connection with some act under such circumstances as to become a part of the res gestee, and declarations of the deceased tending to show that a written will has been revoked are open to the same objection, unless they accompany some act which the statute prescribes as a requisite of revocation, and then they are received as in other cases as part of the res gestæ.” Professor Wigmore suggested that a *299 testator’s declarations may be used as indicating “ a condition of mind'relevant to the issue ” and admissible as either circumstantial evidence or as statements of a mental condition under an exception to the hearsay rule. (§ 1738.) lie drew a distinction between a case such as Matter of Kennedy where the declarations were offered to prove the very act of revocation or the opposite, and a case like the present one where the particular act by the testator is conceded and the inquiry is merely as to the accompanying intent. In respect of the latter case he said: 1 i But since the question is here merely one of the existence of a state of mind, may we not infer the testator’s then state of mind from his state of mind at a prior or subsequent time not too remote? The principle of Relevancy already examined (ante, §§ 241, 242) certainly justifies this; hence, as evidence of this prior or subsequent state of mind, utterances at the prior or subsequent time are admissible.” (Wigmore, Evidence [3d ed.], pp. 117-118.)
It would be possible to accomodate the New York decisions, particularly those involving proceedings to prove lost or destroyed wills under section 143" of the Surrogate’s Court Act, to the rule as stated above by Professor Wigmore. However, because of the apparent divergence of the New York rule from that of other jurisdictions, the court deems it appropriate here to rest its decision upon the ruling that the circumstances in this record do not show a revocation of the will, and to reject the additional evidence offered by the proponent.
Submit decree on notice admitting the will to probate.