## (April 27, 1965)

■ In the Matter of the Probate of the Will of MERRITT BONNER, Deceased. WILLIAM B. BONNER, Appellant; VICTOR D. BORST, JR., et al., Respondents.

APPEAL from a decree of the Surrogate's Court, New York County, entered April 30, 1964, admitting a will to probate.

Decree, admitting a will to probate, affirmed.

BREITEL, J. P. (dissenting). The decree allowing probate of this mutilated will should be reversed on the law and the facts and probate denied.

The will was found cut in two, irregularly but as if by a pair of scissors. It was allegedly found by one of the proponents among the papers of decedent in a trunk owned by decedent. The first envelope in which the will was contained was similarly cut in half. The finder testified that the cut will and the cut envelope were found in still another envelope, intact, which was inscribed in decedent's handwriting "My Will". Notably, and without explanation although its production was called for, this envelope was never produced.

At ultimate practical issue is whether the estate of decedent passes by intestacy to the father or whether it passes under the will in trust to pay life incomes to the father and a woman friend with remainder to named charitable beneficiaries.

The will had been prepared by a lawyer, the same lawyer who continuously handled the small investment matters with which decedent, a subway maintainer, had been interested. The finder of the will was the woman friend of decedent. All parties agreed that decedent had cut the will and kept the remnants. The critical legal issue was whether the mutilation had been done with the requisite intent to revoke, or whether it was a mistake. In the one

case the will was revoked beyond recall, and in the other case it would remain ambulatory. Thus, if the revocation was made by mistake of judgment, it would still be irreversible.

The statute authorizes revocation of a will by the maker by burning, tearing, cancellation, obliteration, or destruction with intent to revoke (Decedent Estate Law, § 34). This exception permitting revocation by act of the maker alone arises out of practical necessity and accommodation to the habits of men, for the statute otherwise provides that a revocation may be effected only by an instrument executed with the same formalities as a will (*ibid.*).

The decisional law has made it evident that where a mutilated will is found among the personal effects of the maker after his death there is a presumption that the mutilation was performed with the intention to revoke (e.g., *Matter of Hopkins*, 172 N. Y. 360; 2 Warren's Heaton Surrogates' Courts [6th ed.], § 186-E, par. 21, cl [e], and cases cited). This is a strong presumption based on the probabilities of human conduct, and one not merely designed to provide a technical procedural burden of persuasion or of going forward with rebutting evidence. It is a presumption of ancient lineage widespread in Anglo-American jurisprudence (see the carefully studied discussion of the presumption by Surrogate FOWLER in *Matter of Kathan*, 141 N. Y. S. 705, 713–716).

In this case, to rebut the presumption, there is the testimony of the legatee of the will, who would be cut off by intestacy, that she found the will, its envelope, and the outer envelope with the maker's inscription "My Will". But the outer envelope was never produced and its whereabouts are wholly unexplained. An aunt testified that decedent had told her that he had cut the will by mistake while cutting expired insurance policies. She also testified that she had advised him that there was no harm, and that it was just the same as if a $50 bill had been cut in half. The cut bill would still be usable currency. Another witness, Herman M. Johnson, a friend, testified that decedent had told him he had cut his will by mistake. One witness, Lewis F. Johnson, testified that the testator had told him both that he had intended to change his will and that he had cut it. As the Surrogate noted, there is a conflict in the American cases whether such testimony is admissible, but in this State the testimony is not admissible (e.g., *Matter of Kennedy*, 167 N. Y. 163).

Assuming, however, that the testimony is admissible, and perhaps some would think it ought to be, there is still the question of what weight should be attached to it. Statements allegedly made after the cutting and offered after the death of the utterer are entitled to very little credit. In the first place, there is no assurance that the utterer was telling the truth, assuming that he said what he is supposed to have said. Secondly, the testimony is quite incapable of contradiction, the utterer being dead. Such a facile device, especially since it could be extended to cover wills totally destroyed by "mistake", could undo the safeguards required for effective revocation of wills (see, e.g., *Matter of Staiger*, 243 N. Y. 468; 2 Warren's Heaton, *op. cit.*, *supra*, par. 21, cl. [a] and cases cited).

Indeed, the leading case in this State excluding declarations of the testator of the kind testified to by the aunt and the friend did so with express recognition of the governing policy. Thus in *Matter of Kennedy* (167 N. Y. 163, *supra*) it was said, at page 170: "We think that the declarations of the deceased were not competent to prove that the will or codicil was in existence at the time of her death. The whole course of legislation in this state from the earliest times to the present day, concerning the execution and revocation of wills, discloses a clear purpose to substitute in all cases written for oral

proof of a testamentary disposition of property and to sweep away all parol proof of testamentary intentions, and, hence, to exclude statements or declarations of the deceased." (Accord: *Matter of Staiger,* 243 N. Y. 468, 472, *supra.*)

Presiding Justice VAN BRUNT in *Matter of Burbank* (104 App. Div. 312, affd. 185 N. Y. 559) made the salient point that the introduction of declarations by the testator other than those which accompanied the act of mutilation would defeat the policy of the statute. He said, at page 321: " If it is admissible, a will could be established or revoked without proof that the formalities which the law has hedged around testamentary papers had in any respect been complied with. The only declarations of a testator in respect to such papers which are competent are those that he makes at the time of execution, they being then part of the *res gestae.*" He had earlier pointed out that to admit such declarations made after the fact would in effect be a repeal of the requirements of the statute.

Turning to the particular facts of this case, it is passing strange that the testator, who was so concerned about his cutting of the will, took advice from his aunt, and spoke to his friend about it, but never consulted with his lawyer, who had prepared the will and was his continuing adviser on investment matters. It makes no sense just as, conversely, it makes the greatest sense that there is a presumption of revocation from the finding of a mutilated will in the testator's possession. To top it off, the outer will envelope, inscribed by testator " My Will" was never produced. The proponent, who claims to have found such an envelope testified that she had turned it over to decedent's lawyer, Mr. Borst, but he denied ever receiving it. That envelope, so inscribed, would be worth many times the testimony of the aunt and the friend, or even of the finder of the will. It is quite significant that the Surrogate in his opinion allowing probate relied heavily on the testimony about this outer envelope, but it was never produced.

Absent the questionable testimony of the aunt and the friend and absent the outer envelope, never produced, there is nothing to rebut the strong presumption of mutilation with intention to revoke.

If the views of the Court of Appeals in *Matter of Kennedy* (167 N. Y. 163, *supra*) reflected a sound and persistent policy, then the holding in this case is a grave erosion of principle.

Accordingly, I dissent and vote to reverse the decree, on the law, and on the facts, and to deny probate to the proffered will.

Rabin, McNally and Stevens, JJ., concur in decision; Breitel, J. P., dissents in opinion in which Bastow, J., concurs.

Decree, admitting a will to probate, affirmed, with $50 costs to respondents payable out of the estate, on the opinion of Surrogate Di Falco. [46 Misc 2d 294.]